■ SAM & MARY HOUSING CORP., Appellant-Respondent, v JO/SAL MARKET CORP., Respondent-Appellant. — In an action, *inter alia,* to declare a lease null and void, plaintiff appeals from a judgment of the Supreme Court, Queens County (Miller, J.), dated August 25, 1983, which, after a nonjury trial, dismissed its complaint and awarded damages to the defendant on its counterclaim for wrongful eviction in the principal sum of $271,522.78. The defendant cross-appeals from so much of the same judgment as denied it any recovery for lost profits and which permitted interest only from the date of the judgment rather than from the date of the wrongful act. ¶ Judgment modified, on the law and the facts, by reducing the principal amount thereof to the sum of $73,343, together with interest from August 25, 1983. As so modified, judgment affirmed, without costs or disbursements, and matter remitted to the Supreme Court, Queens County, for entry of an appropriate amended judgment. ¶ The evidence of wrongful eviction was overwhelming. With respect to damages, the trial court properly allowed defendant the cost of the fixtures ($2,000) and the stock ($9,500), and correctly determined the value of the lease from the date of the wrongful eviction to the date of the trial ($25,667), based upon the difference between the rent reserved and the fair rental value, and by the same formula the value thereof for the unexpired term of the lease, reduced to its present value ($36,176) (see *Randall-Smith, Inc. v 43rd St. Estates Corp.,* 17 NY2d 99). However, it was error for the trial court to award defendant $14,000, the alleged purchase price of its business, and attorney's fees of $2,500 in connection therewith. The record lacks evidence sufficient to support the award for those items. It was also error to award defendant treble damages. Since no force or fear of personal violence was involved, treble damages could not be awarded pursuant to RPAPL 853 as it read at the time of the wrongful eviction in April, 1980. Nor should the amendment to RPAPL 853, effective July 7, 1981 (L 1981, ch 467, § 2), have been given retroactive effect. Said amendment created a new liability by allowing treble damages for unlawful

eviction not involving force or violence. ¶ We find no error in the Trial Judge taking judicial notice of facts within her personal knowledge which were derived from an unrelated case that came before her in February, 1983. Upon becoming aware that she possessed such information, affecting the credibility of plaintiff's key witness, which was not then part of the record, the Trial Judge, exercising sound judgment, advised both attorneys of the fact, and gave plaintiff the opportunity to clarify any factual inconsistencies concerning the circumstances surrounding the rerenting of the store following defendant's ouster. Having chosen not to avail itself of the opportunity, or to move the court to recuse itself, plaintiff cannot now be heard to complain. ¶ Defendant's contention as to the failure of the court to award interest from April 23, 1980, the date defendant was locked out of possession, is without merit. The trial court has fixed a reasonable intermediate date — the date of judgment — pursuant to CPLR 5001 (subd [b]). ¶ The court has considered plaintiff's and defendant's other contentions and has found them to be without merit. Niehoff, Boyers and Lawrence, JJ., concur.

Weinstein, J., concurs in part and dissents in part, with the following memorandum, in which O'Connor, J. P., concurs. While I concur with the majority to the extent that it concedes that the damages awarded by the trial court were patently excessive, I cannot agree that the trial was otherwise without error. In my view, the trial court erroneously took judicial notice of a Civil Court case within its own personal knowledge with the result that certain of its findings as to credibility were impermissibly tainted and a new trial, as to both liability and damages, is warranted. ¶ On or about August 17, 1979, plaintiff purchased the premises at 105-34 Rockaway Boulevard, Ozone Park from Abraham Eagle. The building contained a 2,000 square-foot area on the ground floor which was utilized as a food market. At the time of the contract negotiations between plaintiff and Eagle leading to the sale, the food market was owned and operated by Giovanni Scalera pursuant to a long-term lease which he has assumed from the Shoman Brothers. In 1980, Scalera had listed the store with a licensed real estate broker in an endeavor to lease it. Samuel Hassine, plaintiff's officer and principal stockholder, claims to have purchased the property without knowledge of the long-term lease then held by Scalera. Contrary to this assertion, Eagle and his attorney testified at trial that there had been extensive discussions among themselves and Hassine during the course of the negotiations leading to plaintiff's purchase of the premises, the subject of which had been the lease of the store. Hassine's former attorney even advised his principal against purchasing the building due to the existence of the lease. Hassine indicated that he would handle the lease in his own way once Scalera went out of business. ¶ Subsequent to plaintiff's purchase of the premises, Vincent Vinti of defendant Jo/Sal Market Corp. approached Hassine for the purpose of leasing the store. Although Vinti alluded to the already existing lease, the parties failed to come to an agreement. Hassine claims not to have procured a copy of the Scalera lease until late 1979. Hassine and his new counsel at all times thereafter maintained that said lease was invalid. ¶ In April, 1980, defendant assumed the lease from Scalera's corporation. The purported date of possession was April 26, 1980. On or about the morning of April 23, 1980, Hassine padlocked the store. Vinti allegedly broke the lock and entered, whereupon Hassine summoned the police to evict him. In May, 1980, the store was rented to an acquaintance of Hassine's, who thereafter assigned the lease to the Rockaway Milk Farm. One of the principals of the latter is the son of Hassine's business associate. ¶ In the course of its memorandum decision, the trial court unequivocally stated that it was taking judicial notice of a case which had been pending before it in the Civil Court, Kings County, in February, 1983. Based upon a fact inferred from

that Civil Court proceeding, the trial court made a negative assessment of Hassine's credibility in the instant case, much to plaintiff's detriment. Although the trial of the instant matter was conducted in March, 1983, the court did not apprise the parties of the perceived conflict vis-à-vis the Civil Court proceeding until May, 1983. ¶ In New York, courts may take judicial notice of a record in the same court of either the pending matter or of some other action (*Rossbach v Rosenblum*, 260 App Div 206, affd 284 NY 745; *Matter of Ordway*, 196 NY 95; Richardson, Evidence [Prince, 10th ed], § 30, p 18). Judicial notice may also be taken of all prior proceedings of a case although held in another court of the State (*Kane v Walsh*, 295 NY 198, 204; *People v Finn*, 73 Misc 2d 266, 268). Depending upon the equities and justice of the situation, a court may take judicial notice of its own records where the cases are closely connected (*Maggio v State of New York*, 88 AD2d 1087, 1089; *Newitt v Newitt*, 282 App Div 81), whether the prior case involved one or more of the same parties (*Matter of Mebert v Mebert*, 111 Misc 2d 500) or totally different parties (*Matter of Paciona v Marshall*, 45 AD2d 462, affd 35 NY2d 289). "While the rules applicable to judicial notice of its own records by the courts in actions other than the case before it, apply with somewhat less vigor to proceedings in other courts judicial notice of proceedings in other courts has been taken when one or more of the parties were the same or the subject matter closely connected" (Fisch, New York Evidence [2d ed], § 1065, p 603). In the instant situation, neither condition prevails. None of the major principals in this action were involved in the Civil Court case of *Herald Midtown Vending Corp. v McDonagh & Harry & Sam*. Nor is there any indication that the subject matter of the two proceedings was closely connected. Under these circumstances, the trial court's act of taking judicial notice of a fact within her personal knowledge which had been derived from a case pending in the Civil Court was patently incorrect. Inasmuch as this colored the court's assessment of the credibility of a key witness for plaintiff, it cannot be dismissed as harmless error. Notwithstanding the fact that plaintiff did not attempt to explain away the alleged conflict or move to have the court recuse itself, reversal is mandated in the interest of justice. ¶ On the issue of damages, it is well settled that in the event defendant proves a wrongful eviction, the measure of the general damages recoverable by a tenant wrongfully evicted by his landlord is the difference between the actual rental value of the premises at the time of the eviction and the agreed upon rent for the unexpired portion of the term (*Clarkson v Skidmore*, 46 NY 297; 33 NY Jur, Landlord and Tenant, § 184, p 540). Such special damages as lost profits are recoverable if proven with reasonable certainty (*O'Toole v Crane & Clark*, 245 App Div 824, affd 270 NY 559; *Snow v Pulitzer*, 142 NY 263). Even damages for emotional distress resulting from an unlawful eviction may be warranted pursuant to " 'civilized public policy' " (*Stiles v Donovan*, 100 Misc 2d 1048, 1050). ¶ At the time of the subject lockout, RPAPL 853 provided as follows: "If a person is disseized, ejected, or put out of real property in a forcible manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence, he is entitled to recover treble damages in an action therefor against the wrong-doer." Effective July 7, 1981, the statute was amended to include eviction in an "unlawful manner" and detainer by "unlawful means". ¶ Inasmuch as the subject incident occurred prior to the amendment's effective date and since such amendments are generally merely prospective in application, absent indication to the contrary (see *De Kosenko v Brandt*, 31 AD2d 612), plaintiff was not entitled to an award of treble damages. Moreover, aside from the issue of retroactivity, it does not appear that plaintiff's conduct was so heinous or reprehensible as to warrant the imposition of punitive damages (see *Walker v Sheldon*, 10 NY2d 401; *I. H. P. Corp. v 210 Cent. Park South Corp.*, 16

AD2d 461, affd 12 NY2d 329; *Jones v Hospital for Joint Diseases & Med. Center,* 96 AD2d 498). ¶ Consequently, I vote to remit the case to the Supreme Court, Queens County for a new trial in accordance with the principles outlined herein. [121 Misc 2d 434.]