■ LONG ISLAND AIRPORTS LIMOUSINE SERVICE CORP., Appellant, v NORTHWEST AIRLINES, Respondent

The plaintiff leased 45 square feet of space in the defendant's Kennedy Airport terminal in order to provide a counter for its representative and a telephone which customers could use to contact it and arrange their transportation. In July of 1979, after a dispute over the plaintiff's failure to pay rent in a timely fashion, the plaintiff's airport supervisor discovered that its telephone had been disconnected and its sign removed. The defendant's terminal manager admitted to the plaintiff's supervisor and president that he was responsible for this eviction, but there is no indication in the record as to the manner in which it was accomplished.

The plaintiff sued on three causes of action. In the first, sounding in wrongful eviction, it alleged that the defendant had acted wantonly, willfully and maliciously, and sought both compensatory and punitive damages. The second cause of action claimed compensation for breach of an implied covenant of quiet enjoyment, and the third sought an injunction to prevent the defendant from reletting the premises. The first and third causes of action were dismissed at the conclusion of the plaintiff's case; the second was dismissed at the end of the trial. The only issue raised on this appeal concerns the propriety of the dismissal of the first cause of action.

Contrary to the trial court's conclusion, the plaintiff did make out a prima facie case of wrongful eviction. Although the rental payments were not made in a timely fashion, the plaintiff cured its default within 10 days of written notification by the defendant, as the lease permitted. Thus, the plaintiff never breached the lease and there was no basis for the eviction. The only question is damages.

The measure of compensatory damages for wrongful eviction is the value of the unexpired term of the lease over and above the rent the lessee must pay under its terms (see, Mack v Patchin, 42 NY 167; Mid-Hudson Recreational Centers v Fallon, 96 AD2d 855; Kepo, Inc. v Romano, 85 AD2d 621), together with any actual damages flowing directly from the wrongful eviction (see, Eten v Luyster, 60 NY 252). The plain-

tiff's only evidence on the issue of damages was its president's testimony as to profits allegedly lost as a result of the defendant's acts. Although loss of profits may be an element of recovery in a wrongful eviction action *(see, Snow v Pulitzer,* 142 NY 263; *Smith v Feigin,* 276 App Div 531; *O'Toole v Crane & Clark,* 245 App Div 824, *affd* 270 NY 559; *Peerless Candy Co. v Halbreich,* 125 Misc 889), the loss must be ascertainable with a reasonable degree of certainty and may not be based on conjecture *(Bromberger v Empire Flashlight Co.,* 138 Misc 754; *Wolff v Hvass,* 11 Misc 561, *affd* 159 NY 551; *see also, Schiffman v Deluxe Caterers,* 100 AD2d 846; *R & I Elecs. v Neuman,* 66 AD2d 836).

The plaintiff's evidence did not meet this standard. The plaintiff had no record of the number of passengers transported to and from the defendant's terminal before the eviction. To determine the profits lost as a result of the eviction, the plaintiff's president simply relied on the fact that the plaintiff had such a telephone in every terminal at Kennedy Airport and calculated an average number of passengers per terminal by dividing the total number of passengers his service transported to and from the airport by the total number of terminals. He then multiplied the result by an average profit per passenger to arrive at a figure for the profit derived from the defendant's terminal. The fallacy in this approach, however, is that there is no basis in the record for his assumption that the number of passengers received at or taken to the defendant's terminal was equal, or even roughly equivalent to, the number of passengers received at or taken to the other terminals. Furthermore, the plaintiff never established that all of its business was derived from the terminal telephones, and it seems obvious that at least some, particularly that which involved transportation to the airport, came from other sources. The plaintiff's evidence, therefore, is too speculative a basis upon which to found recovery for lost profits.

The plaintiff's claim for punitive damages was also not established. Its failure to prove that force or fear of personal violence was used to accomplish the eviction prevents it from sustaining a claim for treble damages under RPAPL 853 *(see, Sam & Mary Hous. Corp. v Jo/Sal Mkt. Corp.,* 100 AD2d 901, *affd* 64 NY2d 1107 *on mem at App Div)* or for punitive damages apart from the statute even if they are available *(see, I.H.P. Corp. v 210 Cent. Park S. Corp.,* 16 AD2d 461, *affd* 12 NY2d 329; *Brandt v de Kosenko,* 57 Misc 2d 574), an issue which we need not address.

Despite the failure to establish damages, however, the cause of action should not have been dismissed outright. Wrongful eviction is a trespass *(see, Schile v Brockhahus,* 80 NY 614; *Eten v Luyster,* 60 NY 252, *supra; Filby v Gaden,* 275 App Div 847)* and, therefore, even without proving actual damages the plaintiff is entitled to nominal damages *(see, Town of Guilderland v Swanson,* 29 AD2d 717, *affd* 24 NY2d 872). Since the plaintiff's second cause of action was premised upon the same acts as the first cause of action, and the defendant had a full opportunity to present a defense with respect to the second cause of action, there is no need for a new trial with respect to the first cause of action. Therefore, the judgment dismissing the plaintiff's first cause of action is reversed insofar as appealed from, and judgment for the plaintiff awarded in the sum of $1. Lazer, J. P., Brown, Niehoff and Weinstein, JJ., concur.