WARD LYKE et al., Respondents, v MARGUERITE ANDERSON, Appellant.

Second Department, May 1, 1989

## APPEARANCES OF COUNSEL

*Vergilis, Stenger & Viglotti (Antonia T. Lucia* of counsel), for appellant.

*Hankin, Hanig & Stall (Lynn M. Smookler* of counsel), for respondents.

## OPINION OF THE COURT

SPATT, J.

A mobile home unoccupied by the owners, Marion

Lyke and her husband Ward Lyke, was unlawfully removed from its lot in a trailer park and deposited in a swampy area, causing damages to the mobile home. The jury awarded compensatory damages but declined to impose punitive damages. Thereafter, the trial court trebled the compensatory damages pursuant to RPAPL 853. From this simple factual scenario we encounter three novel questions in the field of law variously known as "wrongful eviction" or "unlawful eviction". We hold that a tenant of a mobile home need not be in actual physical occupancy to be entitled to recover damages under RPAPL 853. We further determine that the award of treble damages following an award of compensatory damage is discretionary with the trial court and was properly awarded in this case. We also hold that a tenant may be entitled to treble damages, even though a jury has declined to award punitive damages.

## I

The defendant Marguerite Anderson is the owner of the Angels Mobile Home Park located in Dutchess County, New York. On or about February 14, 1981, the parties entered into a written lease of a vacant parcel of land in the defendant's mobile home park as a site for a mobile home for Mrs. Lyke's mother. The lease was signed on the defendant's behalf by Paul Clarke, the son of the defendant and the manager of the property. Along with the lease, Marion Lyke signed a copy of the rules and regulations applicable to the mobile home park.

The duration of the original lease is not clearly stated in the record. However, on April 16, 1981, Paul Clarke entered into a stipulation with the plaintiff Marion Lyke in which it was agreed that the plaintiffs shall "receive a one year lease for the period of January 1, 1982 to January 1, 1983".

The plaintiffs purchased a mobile home as a residence for Mrs. Lyke's mother, and it was installed on the leased lot. The plaintiff's mother lived in the home for three months until her death in July 1981. The plaintiffs then notified the defendant's son in writing that they intended to sell the mobile home. After attempting to sell the mobile home by advertising in the Pennysaver, the plaintiffs decided to postpone further attempts to sell until the spring of 1982 to endeavor to obtain a better sales price. Although the mobile home was then unoccupied, the plaintiffs continued to pay monthly rent for the lot directly to the defendant's son, maintain the utilities serving

the mobile home, kept a sun deck affixed to the mobile home, and left personal property in the mobile home. They also requested the lease extension to January 1, 1983, to which they were entitled under the terms of the April 16, 1981 stipulation.

Notwithstanding their payment of rent for March 1982 and the receipt and acceptance of that rent, on March 12, 1982, the defendant signed and sent to the plaintiffs a "NOTICE OF FORFEITING A LEASE" demanding (1) that they pay storage charges of $12 per day, and (2) that as of April 1, 1982, they "will be required to MOVE THE UNIT". On March 13, 1982, the defendant sent another notice to the plaintiff Marion Lyke requesting the the plaintiffs dismantle the sun deck because it violated the mobile home park regulations. On March 17, 1982, the defendant sent a third letter to the plaintiff Marion Lyke which purported to reject the March rent, repeated the directive to remove the unit by April 1, 1982, informed her of the storage charges accruing against her occupancy, threatened removal and sale of the unit, and stated: "This unit will be off the present site by April 1st with or without your cooperation. We guarantee it." Notwithstanding this purported rejection of the March 1982 rent, the record indicates that that rent was received and accepted by the defendant's son.

On March 31, 1982, or April 1, 1982, the plaintiffs discovered that the sun deck had been dismantled and demolished, and the utilities had been disconnected. These acts were done without the consent of the plaintiffs and without any court approval.

The plaintiffs mailed the rent for the months of May 1982 and June 1982 to the Angels Mobile Home Park by certified mail, return receipt requested, and the payments were received and retained. On June 11, 1982, the plaintiffs visited the park and found their lot vacant. Further investigation revealed that their mobile home had been removed from their lot and deposited in a swampy area at the base of a cliff on the defendant's property. The plaintiffs had the mobile home retrieved from the swamp and repaired. The mobile home was sold on August 3, 1982, for $8,000. No legal proceedings of any kind had ever been commenced by the defendant with regard to plaintiffs' tenancy. The plaintiffs then commenced the instant action to recover compensatory and punitive damages and treble damages pursuant to RPAPL 853, for wrongful eviction.

At the trial, the defendant testified that although she owned the trailer park and the land on which the park was located, her son Paul Clarke* had the sole responsibility for managing and operating the mobile home park:

"Q Mrs. Anderson, from the time you owned that park did you ever manage that park?

"A Never.

"Q Who had the responsibility of managing that park?

"A My son Paul Clarke.

"Q What did Paul Clarke actually do with respect to that park?

"A He built the park. He put in the sewer, the water, the electrical. He blasted out rock, put in roads, developed the sites. He rented the sites. He signed leases. He collected rents, put the money back into the park. He ran the whole show. He was boss.

"Q Did you ever sign any leases for that park?

"A Never.

"Q Did you ever have any rent paid to you for that park?

"A Never."

The defendant stated that her son was violent, had an explosive temper, and forced her to sign the letters demanding the plaintiffs' eviction. She testified that her son beat and coerced her.

"Q Mrs. Anderson, what was the relationship between you and your son, vis-à-vis that park?

"A He was the boss. I had to do what he told me to do. I could not tell him what to do."

After she learned that her son "had ripped off the deck" in April 1982 she took him to see her attorney for advice, and she gave him money to retain counsel. On cross-examination, the defendant conceded that, despite her son's violent and coercive conduct, she made no attempt to restrict his authority with respect to his total control of the mobile home park. She acknowledged that at a deposition taken after her son's death, she had admitted that the removal of the sun deck was done by Paul at her direction. The defendant also testified that she continuously protected her son, covered up for his

---

* The defendant admitted in her answer that she operated her mobile home park through Paul Clarke, her son, agent, and manager. Paul Clarke died prior to the trial.

misconduct, and posted bail for him on criminal charges on numerous occasions, because he would have beaten her, and also because she loved her son and could not turn him down.

After both sides rested, the defendant's attorney conceded that the plaintiffs' mobile home was evicted from the mobile home site "in violation of" the relevant statutory provisions.

The jury rendered a verdict in favor of the plaintiffs awarding compensatory damages in the sum of $12,000, but declined to award punitive damages. The award was then trebled by the trial court pursuant to the provisions of RPAPL 853. Judgment was entered in favor of the plaintiffs and against the defendant for the principal sum of $36,000.

On appeal, the defendant contends that (1) a cause of action under RPAPL 853 may only be maintained by a tenant who is actually physically occupying the real property, (2) the awarding of treble damages is permissive and not mandatory and should not have been awarded in this case, (3) the defendant was not responsible for treble damages for the actions of her son, and (4) in view of the jury verdict denying punitive damages, it was improper to award treble damages.

The defendant does not dispute the propriety of the award of compensatory damages. It is the treble damages that are in issue on this appeal. The defendant argues that since the plaintiffs were never in physical possession or actual occupancy of the mobile home in question, they cannot be awarded treble damages under RPAPL 853, and that even if the statute were applicable, treble damages should not have been awarded in this case. We disagree.

## II

The plaintiffs are mobile home tenants, and the defendant's real property is a mobile home park, as those terms are defined in Real Property Law § 233 (a) (1) and (3). The tenants in the mobile home park are subject to eviction by way of the same summary proceedings as are the tenants of any other real property (see, Real Property Law § 233 [d]; RPAPL art 7). Real Property Law § 233 has been referred to as the Mobile Home Park Tenants' "Bill of Rights" (see, 1981 NY Legis Ann, at 120). The statute was enacted in recognition of the facts that mobile home tenants often have limited economic resources and are particularly susceptible to abuses, including wrongful eviction, by mobile home park operators (see, Anno-

tation, *Mobile Homes—Landlord's Fraud,* 39 ALR4th 859, 861).

RPAPL 853 is the statutory basis for a cause of action to recover treble damages for forcible or unlawful entry. The statute, as last amended in 1981, provides, as follows:

"853. Action for forcible or unlawful entry or detainer; treble damages

"If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer".

The plaintiffs were the owners but were never in physical occupancy of the mobile home. A "mobile home tenant" is defined, in part, as "one who rents space in a mobile home park from a mobile home park owner or operator for the purpose of parking his mobile home" (Real Property Law § 233 [a] [1]). The parties entered into precisely this rental agreement. Thus, by clear express definition, actual physical occupancy in the mobile home is not required in order to be a "mobile home tenant".

In 1981, RPAPL 853 was amended to encompass evictions in an "unlawful manner" or by "unlawful means" *(see, Maracina v Shirmeister,* 105 AD2d 672), in addition to those involving force or violence, thereby manifesting a legislative intent to provide broad and expanded coverage to allow recovery where no force or threat is employed but an unlawful eviction nevertheless takes place. As stated in the memorandum of Assemblyman Richard N. Gottfried in support of the bill: "Present procedural remedies only apply where the illegal eviction was carried out by 'force'. However, these evictions are usually carried out by removing the tenant's possessions while he or she is out, or by plugging or changing the door lock—actions beyond the narrow legal definition of force. This bill would correct the unduly narrow scope of the remedy to cover the full wrong" (1981 NY Legis Ann, at 256).

By virtue of the lease, the plaintiffs had the right to exclusive occupancy of the lot at issue and became " 'entitled to use the premises, in the same manner as the owner might have done' " *(Presby v Benjamin,* 169 NY 377, 379; *see also, People v Scott,* 26 NY2d 286, 289). The important aspect of the plaintiffs' tenancy was the right to possession; physical occu-

pancy was unnecessary. The plaintiffs were entitled to the use of the mobile home at their will. Their right to park their mobile home on the defendant's site was entitled to the protection of the law even though the plaintiffs did not occupy the mobile home. In *Town of Oyster Bay v Jacob* (109 App Div 613, 615), this court defined "actual possession" as follows: " 'Generally, any overt acts indicating dominion and a purpose to occupy and not to abandon the premises will satisfy the requirements as to possession.' (13 Am. & Eng. Ency. of Law [2d ed.], 748.) It is possession 'required by the nature and situation of the property.' *(Allaire* v. *Ketcham,* 55 N.J. Eq. 168.) It intends that the land is 'in the immediate control or power of the party.' *(Omaha & Florence L. & T. Co.* v. *Parker,* 33 Neb. 775, 51 N.W. Rep. 139.)"

The plaintiffs had the right to occupy the mobile home because they were lawful tenants under a viable and existing lease. A lessee out of possession may maintain a summary squatter's proceeding against a subsequent lessee *(Cohen v Goldfein,* 100 AD2d 795). To be distinguished are those situations where the alleged tenant either abandoned the leased premises and ceased paying rent or had no right of possession to begin with. For example, in *Nieves v 331 E. 109th St. Corp.* (112 AD2d 59, *appeal withdrawn* 66 NY2d 1036) the Appellate Division, First Department, reversed a judgment awarding the plaintiffs treble damages, finding that at the time of the complained-of entry, the plaintiffs had vacated the premises, relocated, removed most of their personal property and ceased paying rent. These facts demonstrated an abandonment of the rented premises.

In *Glass v Wiener* (92 AD2d 584), the plaintiffs brought an action against the landlord who illegally entered an apartment which had been leased and occupied exclusively by their deceased parents, and removed their personal property. Granting the defendant's motion for summary judgment on a cause of action asserted pursuant to RPAPL 853, this court concluded that the plaintiffs had no standing to sue because they never had any possessory right to the apartment. RPAPL 853 provides a cause of action to a tenant who is "disseized, ejected, or put out of real property in a forcible or unlawful manner". Since the plaintiffs in *Glass* were not the tenants and had no right of possession, the court dismissed their complaint.

The statutory language does not restrict recovery to tenants who are in actual physical occupancy. It is sufficient that the

tenants have, as did the plaintiffs in this case, the legal right to peaceful possession of the leased property. They entered into a lease which covered the period at issue; they paid rent directly to Mr. Clarke for the entire period involved in these occurrences, which rent was received and accepted; they demanded the lease extension to which Mr. Clarke agreed; they maintained the sun deck attached to their mobile home; they maintained the utilities; and they kept personal property in the home. Moreover, based on the defendant's correspondence, the plaintiffs' rights to the leased lot and mobile home were implicitly recognized by both the defendant and Mr. Clarke. For these reasons, we conclude that the plaintiffs had the legal right to occupy the mobile home, and they were entitled to bring an action to recover treble damages for unlawful eviction under RPAPL 853.

## III

The defendant also urges that the award of treble damages authorized by RPAPL 853 is discretionary and not mandatory and should not have been directed in this case. She contends that the trial court acted improperly when it "automatically trebled" the damages and erroneously believed it was legally compelled to treble the compensatory damages.

Whether a given provision in a statute is mandatory or directory is to be determined by the statutory language and from the legislative intent gathered from the entire act and the circumstances surrounding its passage, keeping in mind the public policy to be promoted and the results that would follow from one or the other conclusion (McKinney's Cons Laws of NY, Book 1, Statutes § 171). The intent is first to be sought from a literal reading of the statute itself *(Zappone v Home Ins. Co.,* 55 NY2d 131). In this regard, RPAPL 853 provides that if a person is ejected in an unlawful manner, "he is entitled to recover treble damages in an action therefor against the wrong-doer".

In this regard, the language of RPAPL 853 is subject to varying interpretations and does not enunciate a clear legislative intent. The Legislature used the words "is entitled to" rather than "may" or "shall". In contrast, a statute which mandates the imposition of treble damages, such as Rent Stabilization Code (9 NYCRR) § 2525.6 (b), provides: "(b) The rental charged to the subtenant by the tenant shall not exceed the legal regulated rent plus no more than a 10-percent

surcharge payable to the tenant if the housing accommodation is sublet fully furnished. Where a tenant violates the provisions of this subdivision, *the subtenant shall be entitled to treble damages"* (emphasis supplied).

On the other hand, a consumer protection statute which provides for clearly discretionary treble damages (General Business Law § 734 [1]), states in pertinent part: "Judgment *may* be entered for up to three times the actual damages suffered by a consumer up to one thousand dollars, or one hundred dollars, whichever is greater, if the court finds [the] violation is willful" (emphasis supplied).

It appears that no appellate court in New York has decided the issue of whether treble damages pursuant to RPAPL 853 are discretionary or mandatory. There are cases implying that treble damages are discretionary. In *Randall-Smith v 43rd St. Estates Corp.* (17 NY2d 99, 102), Judge Keating stated that: "The record leaves no doubt that plaintiff was forcibly ejected from a portion of the leasehold without justification and over strenuous objection, and *that treble damages are appropriate in the circumstances* (Real Property Actions and Proceedings Law, § 853)" (emphasis supplied).

In *Compton v "The Chelsea"* (139 NY 538, 541), the Court of Appeals interpreted similar statutory language, as follows: "[A tenant] may, if he so elects, resort to his action of ejectment, and in the same suit recover his damages, *which may be trebled,* if the wrongful entry and withholding are shown to be of the character described in § 1669" (emphasis supplied).

More recently, in *Sam & Mary Hous. Corp. v Jo/Sal Mkt. Corp.* (100 AD2d 901-902, *affd* 64 NY2d 1107 *for reasons stated at App Div),* this court declined to apply the 1981 amendment to RPAPL 853 retroactively because it "created a new liability by *allowing* treble damages for unlawful eviction not involving force or violence" (emphasis supplied). We also take note of the well-reasoned opinion of Justice Sherman in *Mannion v Bayfield Dev. Co.* (134 Misc 2d 1060), in which he concluded that the awarding of treble damages under RPAPL 853 is permissible and not mandatory.

Although the issue is close, in addition to the ambiguous language, two factors persuade us that the Legislature intended to leave the question of whether treble damages should be awarded to the discretion of the court. First, prior to the 1981 amendment, only conduct which involved force and personal violence and a "threat and menace to life and limb"

*(Drinkhouse v Parka Corp.,* 3 NY2d 82, 91) could result in treble damages. The 1981 amendment has greatly broadened the potential liability of wrongdoers who evicted tenants by "unlawful" as well as violent means. The Legislature may very well have intended that the Trial Judge should have discretion as to the imposition of the drastic remedy of treble damages. We can envision cases where a tenant is dispossessed by "unlawful means" which are unintentional or which result from a reversal of a determination in the landlord's favor or from a jurisdictionally defective eviction proceeding *(see, Mannion v Bayfield Dev. Co., supra),* in which the tenant may not be "entitled" to treble damages.

Secondly, we are cognizant of the fact that multiple damage statutes are penal in nature and are to be strictly construed (36 NY Jur 2d, Damages, § 185). While punitive damages are a different kind of a penal award, certain analogies are pertinent to this discussion. Under any view of the law, punitive damages are not mandatory. As stated in *Reynolds v Pegler* (123 F Supp 36, 39, *affd* 223 F2d 429, *cert denied* 350 US 846), the awarding of punitive damages is discretionary with and should be reviewed by "the dispenser of justice". Given these basic and sound principles, coupled with the absence of clear mandatory language in the statute, we conclude that the awarding of treble damages pursuant to RPAPL 853 is discretionary.

■ Turning to the imposition of treble damages in this case, the record reveals that the trial court was of the belief that once the compensatory damage verdict was rendered, it was compelled to treble the amount. Despite the fact that the trial court did not initially exercise its discretion in awarding treble damages, we can exercise our independent discretion and determine this issue. In this regard, we note that the factual record in this case is complete, and no further hearing will be necessary. Our scope of authority in a discretionary matter is as broad as and is coextensive with that of the trial court *(Majauskas v Majauskas,* 61 NY2d 481, 493-494; *Krich v Wall Indus.,* 118 AD2d 627). Further, we may exercise our discretion independently and substitute our own discretion, even in the absence of an abuse of discretion *(Brady v Ottaway Newspapers,* 63 NY2d 1031; *Broida v Bancroft,* 103 AD2d 88). Where, as here, the record is complete and the essential facts can be readily and sufficiently established by a review of the record *(see, Weckstein v Breitbart,* 111 AD2d 6; *Buisch v State*

*of New York,* 98 AD2d 967), remittitur to the trial court is unnecessary *(see, e.g., Daghir v Daghir,* 56 NY2d 938).

Having decided that the award of treble damages is not mandatory, we must now consider whether they are warranted in this case. The record reveals that the defendant's son and general manager deliberately avoided required eviction proceedings and resorted to self-help to terminate the plaintiffs' tenancy. Intentionally and without legal right, he disconnected the utilities and electrical lines to the mobile home, smashed the attached sun deck and, finally, physically removed the mobile home from the leased lot and dumped it in a swampy area. All of these illegal acts were done during a period when the defendant's son accepted and retained the rental payments for the mobile home lot. These destructive actions are illustrative of the precise evil that RPAPL 853, as amended, was designed to prevent. The statute states that if a person is ejected "in a forcible or unlawful manner" by "unlawful means", that person is "entitled to recover treble damages". Short of personal violence against the plaintiffs, it is difficult to perceive a more extreme manner of dispossessing the lawful owner of a mobile home than that taken in this case by the defendant's son.

Nor is there any merit to the defendant's contention that, as the nominal employer of her son, she is not vicariously liable for a penal award for treble damages under RPAPL 853. The general rule is that an employer is shielded from responsibility for punitive damages for the malicious acts of her employee, unless the employer has authorized, participated in, consented to or ratified the conduct giving rise to such damages or deliberately retained an unfit or violent employee with knowledge of his propensities. For the purpose of this discussion, we again analogize treble damages with punitive damages, which are more difficult to obtain. As stated by Judge Kaye in *Loughry v Lincoln First Bank* (67 NY2d 369, 378): "In this State, the question has long been settled: an employer is not punished for malicious acts in which it was not implicated. While the decision to award punitive damages in any particular case, as well as the amount, are generally matters within the sound discretion of the trier of fact, there is a threshold issue: punitive damages can be imposed on an employer for the intentional wrongdoing of its employees only where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages, or deliberately retained the unfit servant * * * or the wrong was

in pursuance of a recognized business system of the entity * * *. Put another way, this 'complicity rule'—in essence the position adopted by the Restatement (Second) of Torts § 909 and the Restatement (Second) of Agency § 217C—results in employer liability for punitive damages only when a superior officer in the course of employment orders, participates in, or ratifies outrageous conduct (see, Morris, *Punitive Damages in Personal Injury Cases,* 21 Ohio State LJ 216, 221 [1960]; *Roginsky v Richardson-Merrell, Inc.,* 378 F2d 832, 842)".

We find that the same strict standard for imposition of vicarious liability for punitive damages should be applicable to demands for treble damages. Applying this principle of law to the facts of this case, the record demonstrates clear "complicity" on the part of the defendant with regard to the conduct of her son. There is substantial and unrefuted evidence that the defendant participated in her sons unlawful conduct by placing and retaining him as her general manager with actual knowledge of his violent behavior, criminal background and his total unfitness for the managerial position. Her assertions of duress are belied by the fact that she personally signed the three letters sent to the plaintiffs, and that after she learned of the son's conduct in this matter, she told him to see an attorney and gave him money to retain counsel. Of significance is the defendant's admission in a deposition, taken after her son's death, that the actions of Paul Clarke were done at her direction. When she was asked at trial about this damaging deposition testimony, she stated, "I was covering for him".

In sum, there is compelling evidence of the "complicity" of the defendant in the unlawful conduct of her son, and that she authorized, participated in, consented to and ratified his conduct. Thus, treble damages should be assessed in this case.

## IV

The fact that the jury rejected the plaintiffs' claim for punitive damages does not preclude an award of treble damages. Although both types of damages are penal in nature in that they are designed to punish and to deter, they are two separate types of penal damages, not equal nor duplicative (see, e.g., *Wittman v Gilson,* 70 NY2d 970, 972 ["while punitive damages and criminal sanctions share a common purpose of punishing misconduct, there are also significant distinctions between the two"]). Treble damages are a statutory remedy based on the Legislature's desire to protect a tenant from

unlawful eviction and to punish certain violators. Punitive damages are a common-law remedy, generally requiring more egregious conduct involving malice, "where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives" *(Walker v Sheldon,* 10 NY2d 401, 404).

Several appellate decisions have addressed the distinction between treble and punitive damages *(see, Long Is. Airports Limousine Serv. Corp. v Northwest Airlines,* 124 AD2d 711; *Brandt v de Kosenko,* 57 Misc 2d 574), and in *Bianchi v Hood* (128 AD2d 1007), the Appellate Division, Third Department, sustained a verdict awarding both treble and punitive damages. In this case, however, we are confronted with a jury verdict of no punitive damages, coupled with a judicial direction under RPAPL 853 to treble the damages. In *Welch v Mr. Christmas* (57 NY2d 143, 150), Judge Meyer, in examining the right of the Legislature to establish penal treble damage statutes which are separate and apart from common-law punitive damages, stated: "Although recovery of exemplary or punitive damages in a common-law action requires a showing of conscious disregard of the rights of others or conduct so reckless as to amount to such disregard *(Hartford Acc. & Ind. Co. v Village of Hempstead,* 48 NY2d 218), it is, as we indicated in *Garrity v Lyle Stuart, Inc.* (40 NY2d 354, 358; see, also, *Hartford Acc. & Ind. Co. v Village of Hempstead, supra),* within the province of the Legislature in authorizing the award of such damages to establish other and different criteria (e.g., Judiciary Law, § 487; Lien Law, § 39-a; RPAPL 853, 861; Workers' Compensation Law, § 14-a)".

Thus, the jury's verdict in favor of the defendant on the issue of punitive damages is not legally inconsistent with the award of treble damages. RPAPL 853 provides that a tenant who is "ejected * * * in a forcible or unlawful manner * * * is entitled to recover treble damages". By contrast, punitive damages are only available in the extreme case where the defendant has been shown to have been motivated by actual malice or to have acted in such a reckless, wanton or criminal manner so as to indicate a conscious disregard of the rights of others *(Miller v Cattaviani,* 119 AD2d 864). Clearly, the jury's determination that the defendant in this case, who was not the actual perpetrator, lacked the requisite malice to support an award of punitive damages, does not prevent us from holding that, as a result of the forcible eviction and removal of the mobile home, the plaintiffs are "entitled to recover treble damages".

Accordingly, the judgment is affirmed insofar as appealed from.

MOLLEN, P. J., THOMPSON and RUBIN, JJ., concur.

Ordered that the judgment is affirmed insofar as appealed from, with costs.