H & P RESEARCH, INC., Plaintiff,

v.

LIZA REALTY CORP. and Jamie Hirsch, Defendants.

No. 95 Civ. 4569 (SAS).

United States District Court,
S.D. New York.

Oct. 17, 1996.

SCHEINDLIN, District Judge.

I have reviewed the comprehensive Report and Recommendation of the Magistrate Judge. As no timely objection has been made I hereby accept and adopt the Report in full.

So Ordered.

*REPORT AND RECOMMENDATION TO THE HONORABLE SHIRA A. SCHEINDLIN*

GRUBIN, United States Magistrate Judge:

This action arises from defendants' removal and destruction of plaintiff's property from commercial space it leased from defendant Liza Realty Corporation. Plaintiff, H & P Research, Inc. ("H & P"), sues for wrongful eviction in violation of Section 853 of the New York Real Property Actions and Proceedings Law and for trespass, conversion and tortious interference with business under New York state common law. After your Honor entered a default judgment against defendants, the case was referred to me for a determination of damages. Plaintiff has chosen to proceed by submission rather than live testimony and has submitted affidavits and documentary evidence on damages. The defendants did not make any submissions or contact the court at any time, despite full notice and opportunity to do so. Defendant Jamie Hirsch is identified in the complaint as either a principal or employee of Liza Realty.

A default judgment entered on well-pleaded allegations of a complaint establishes a defendant's liability. The allegations are to be accepted as true, except those relating to the amount of damages. *Bambu Sales, Inc. v. Ozak Trading, Inc.,* 58 F.3d 849, 853 (2d Cir.1995); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981); *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974); *Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 69–70 (2d Cir.1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). The following are my proposed findings of fact and conclusions of law.

Section 853 of the New York Real Property Actions and Proceedings Law ("RPAPL") provides in pertinent part that

Edward Weissman, Weissman & Seeger, New York City, for plaintiff.

None for defendants.

"[i]f a person is disseized, ejected, or put out of real property in a forcible or unlawful manner ... he is entitled to recover treble damages in an action against the wrongdoer." Damages for the removal, destruction or discarding of property in the course of an unlawful eviction are included under RPAPL § 853. *See Rocke v. 1041 Bushwick Ave. Assoc., Inc.,* 169 A.D.2d 525, 564 N.Y.S.2d 379 (1st Dep't 1991); *Sam & Mary Housing v. Jo/Sal Market Corp.,* 100 A.D.2d 901, 901, 474 N.Y.S.2d 786, 787 (2d Dep't 1984), *aff'd,* 64 N.Y.2d 1107, 490 N.Y.S.2d 185, 479 N.E.2d 821 (1985); *Williams v. Llorente,* 115 Misc.2d 171, 171–73, 454 N.Y.S.2d 930, 931–32 (1st Dep't 1982). Furthermore, an award of treble damages pursuant to RPAPL § 853 does not preclude an additional award of punitive damages, *see, e.g., Williams v. Llorente,* 115 Misc.2d at 172, 454 N.Y.S.2d at 931; *Bianchi v. Hood,* 128 A.D.2d 1007, 513 N.Y.S.2d 541 (3d Dep't 1987), which may be awarded "in the extreme case where the landlord is shown to have been motivated by actual malice or to have acted in such a reckless, wanton or criminal manner so as to indicate a conscious disregard of the rights of others." *Lyke v. Anderson,* 147 A.D.2d 18, 31, 541 N.Y.S.2d 817, 826 (2d Dep't 1989). Similarly, where the defendant's conduct evinces malice or reckless disregard for a plaintiff's rights, punitive damages are available for such torts as trespass and conversion. *See, e.g., Kubin v. Miller,* 801 F.Supp. 1101, 1122 (S.D.N.Y. 1992); *Malerba v. Warren,* 96 A.D.2d 529, 464 N.Y.S.2d 835, 837 (2d Dep't 1983).

In support of its request for treble damages as well as punitive damages, plaintiff has submitted affidavits from Michael E. Perrone, the president of H & P; telecommunications expert Jonathan B. Rubin; and accountant Robert T. Singer. According to Perrone, operating as "the Smokers Rights Network," H & P is in the business of reselling long distance telephone service. It purchases large blocks of long distance time at a volume discount and then resells it to residential customers in smaller blocks. Perrone Aff. ¶ 3. Through "affinity marketing," H & P identifies people who smoke and who are motivated to defend smokers' rights and to contribute to organizations supporting such rights. H & P generates the names of target smokers or "leads" by hiring independent contractors to conduct face-to-face surveys and hand out questionnaires in public places. It then solicits these leads for its long distance telephone service, which gives 10% of the amount billed to such organizations. *Id.* ¶¶ 4–6.

On or around November 1, 1994, H & P began operations in New York City in commercial space at 37 East 28th Street in Manhattan that it rented from Liza Realty. Perrone Aff. ¶ 7. During the next three months, Perrone complained several times to Liza Realty and Hirsch that the heat was not in working order and was led to believe by defendants that they would take care of the problem. *Id.* ¶ 8; Complaint ¶ 7. On or about February 9, 1995, police arrived at Liza Realty to meet with Perrone regarding what the complaint elliptically describes as "an incident in which Perrone was involved." Complaint ¶ 8. Hirsch escorted them to the premises and then departed. *Id.* After the police questioned Perrone, "the issue was resolved"—the complaint does not say what "the issue" was—and Perrone then left for a vacation. *Id.* When Perrone returned on March 6, 1995, he found that the lock to the premises had been removed and replaced with a dummy lock and that all of H & P's business records, including its lists of leads, furniture, computers, television, stereo, VCR and other property had been removed. Perrone Aff. ¶ 9. Perrone contacted Hirsch, who admitted that he and Liza Realty had removed and discarded the property. Admitting that defendants had "made a mistake" and "acted in haste," Hirsch suggested that H & P "not worry," as defendants were insured and would submit a claim stating that the premises had been "robbed." *Id.* ¶ 10. The property confiscated and discarded by defendants included records of approximately 120,000 leads. *Id.* ¶ 13. According to Perrone, defendants' destruction of the records caused H & P to be unable to service effectively its existing clients and to develop potential new clients, resulting in H & P's ceasing its New York operations. *Id.* ¶ 21.

On the basis of cancelled checks substantiating payments to canvassers and to

others for advertising and office expenses, H & P incurred costs of $134,954.21 to produce the 120,000 leads, the records of which were discarded by defendants. *Id.* ¶ 13; Plaintiff's Ex. C. On the basis of receipts and invoices for the purchase of the furniture, computers, electronic equipment and other personal property that was discarded, the value of that property comes to $10,740.99. Perrone Aff. ¶ 15; Plaintiff's Exs. D, E. Having thus substantiated that the value of its discarded records and personal property is $145,695.20 and that these records and property were discarded pursuant to a wrongful eviction as established by the complaint and, moreover, admitted by defendants according to the uncontroverted proof, plaintiff is entitled to recover treble damages of $437,085.60 under RPAPL § 853.

Plaintiff also seeks damages based on lost profits. With experience as a consultant to long distance carriers and resellers and experience with "affinity marketing," Rubin estimates that the average monthly bill for residential long distance usage for plaintiff's customers would have been $22.00 and that 12% of its 120,000 leads would have become its customers. Rubin Aff. ¶¶ 6–7. On the basis of the gross revenues these customers would have been expected to generate between March and December 1995, and subtracting what would have been plaintiff's expenses during this period, Singer estimates plaintiff's lost profits to have been $779,168.00. Singer Aff. ¶¶ 3–6. His estimates are based on his knowledge of other similar businesses. While lost profits may be an element of recovery in a wrongful eviction action, they must be proven with sufficient certainty and not be speculative. *Randall–Smith, Inc. v. 43rd St. Estates Corp.*, 17 N.Y.2d 99, 105–06, 268 N.Y.S.2d 306, 311–13, 215 N.E.2d 494 (1966); *Sam & Mary Housing v. Jo/Sal Market Corp.*, 121 Misc.2d 434, 445, 468 N.Y.S.2d 294, 301 (Sup.Ct.Queens Co.), *modified on other grounds*, 100 A.D.2d 901, 474 N.Y.S.2d 786 (2d Dep't 1984), *aff'd*, 64 N.Y.2d 1107, 490 N.Y.S.2d 185, 479 N.E.2d 821 (1985). Under New York law, "[i]n order to recover lost profits, a business must have been established and in operation for a definite period of time and calculations based on other similar businesses are too

speculative and will not satisfy the [requirement that a] reasonable means of calculating [the amount be provided]." *Mehta v. New York City Dep't of Consumer Affairs*, 162 A.D.2d 236, 237, 556 N.Y.S.2d 601, 602 (1st Dep't 1990). *See Suffolk Sports Center, Inc. v. Belli Constr. Corp.*, 212 A.D.2d 241, 248, 628 N.Y.S.2d 952, 957 (2d Dep't 1995); *Nineteen New York Properties Ltd. Partnership v. 535 5th Operating Inc.*, 211 A.D.2d 411, 412, 621 N.Y.S.2d 42, 43 (1st Dep't 1995); *Sam & Mary Housing v. Jo/Sal Market Corp.*, 121 Misc.2d at 445, 468 N.Y.S.2d at 301. According to the complaint, H & P is incorporated in Illinois and maintains its principal place of business there. Complaint ¶ 1. However, plaintiff has given no account of the scope of its business in Illinois or anywhere else prior to its abortive operations in New York, much less any account of profits it may have derived from similar operations. For purposes of determining whether lost profits may be recovered herein, it is immaterial whether H & P's New York operations were essentially a "start-up venture," *Nineteen New York Properties Ltd. Partnership v. 535 5th Operating Inc.*, 211 A.D.2d at 412, 621 N.Y.S.2d at 43, *i.e.*, "a new business with a nominal fiscal history," *Suffolk Sports Center, Inc. v. Belli Constr. Corp.*, 212 A.D.2d at 248, 628 N.Y.S.2d at 957, or whether plaintiff, if it had already engaged in a significant amount of such business, has chosen, for whatever reason, not to give any financial account of it to this court. The speculative basis of projections drawn from other businesses are not sufficient to award plaintiff lost profits.

Plaintiff also requests an award of punitive damages in addition to the treble damages under RPAPL § 853. Plaintiff's only account of the incidents leading up to its eviction has been set forth above, and Hirsch's admission to Perrone that defendants "made a mistake" and "acted in haste" is not sufficient to meet the heavy burden of showing motivation by malice or actions evincing the reckless disregard required for an award of punitive damages.

Plaintiff is, however, entitled to recover prejudgment interest on the treble

damages under RPAPL § 853. *See* N.Y.Civ. Prac.L. & R. § 5001(a) (McKinney 1996 Supp.); *Axtell v. Kurey*, 222 A.D.2d 804, 634 N.Y.S.2d 847, 849 (3d Dep't 1995), *appeal denied*, 88 N.Y.2d 802, 644 N.Y.S.2d 688, 667 N.E.2d 338 (1996); *Property Owners Ass'n of Harbor Acres, Inc. v. Ying*, 137 A.D.2d 509, 511, 524 N.Y.S.2d 252, 255 (2d Dep't 1988); *Delulio v. 320–57 Corp.*, 99 A.D.2d 253, 254, 472 N.Y.S.2d 379, 381 (1st Dep't 1984). Such interest is to be calculated at the simple rate of 9% per annum as of March 6, 1995. N.Y.Civ.Prac.L. & R. §§ 5001(b), 5004 (McKinney 1992 & 1996 Supp.); *see Gallien v. Connecticut General Life Ins. Co.*, 919 F.Supp. 139, 143–44 (S.D.N.Y.1996). I therefore recommend that plaintiff recover $62,-641.74 in prejudgment interest.[1]

## *CONCLUSION*

For the foregoing reasons, I recommend that plaintiff recover a total of $499,727.34, comprised of damages of $437,085.60 and prejudgment interest of $62,641.74, together with the costs of this action.

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of Court and send copies to the Honorable Shira A. Scheindlin, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Scheindlin. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d at 1054; *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary*, 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *Wesolek v. Canadair Ltd.*, 838 F.2d

55, 58 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

Dated: September 19, 1996.

---

**1.** To allow for the filing of objections before judgment may be entered pursuant to this Report and Recommendation, interest has been calculated to October 7, 1996. *See IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Torres v. CBS News*, 879 F.Supp. 309, 311–12 (S.D.N.Y.1995). For each day thereafter until judgment is entered, $107.48 per day should accrue.