*544 OPINION OF THE COURT
Kathy J. King, J.
Petitioner moves by order to show cause to be restored to possession based on an illegal lockout and constructive eviction of the premises located at 124 Avenue J, Basement and Atrium, Brooklyn, New York (hereinafter the subject premises). Petitioner also seeks treble damages pursuant to RPAPL 853 and attorney fees. Respondent submitted an answer and notice of appearance opposing the motion on the basis that no permission had been given to utilize the basement of the subject premises, thereby resulting in his right to regain possession. While respondent appears in the action by an attorney, the court notes that an answer is an improper method for opposing the relief requested in the petition. In accordance with CPLR 2214, respondent should have properly submitted an affidavit by an officer of the corporation with knowledge of the facts and circumstances. Notwithstanding this procedural deficiency, the court held a hearing on March 28 and April 2, 2008 on the issue of whether the petitioner had a right to use the basement.
Other than the fact that the parties entered into an oral agreement on or about October 2007 the parties have diametrically opposed views regarding the nature, terms, and conditions of their agreement. On direct examination, Meir Soibelman, a managing member of petitioner tenant, testified that in October 2007 he began occupying the basement in question pursuant to an oral agreement with Raphel Cohen, a partner in respondent corporation. According to Mr. Soibelman, he met Mr. Cohen sometime in August 2007 after responding to a “FOR RENT” listing located outside the atrium. He further testified that at the time of their meeting, he expressed to Mr. Cohen that he was interested in using the atrium to sell flowers and that Mr. Cohen agreed to accept $800 monthly for the use of the atrium including the basement, which is accessible through a trap door cut into the sidewalk within the atrium space. He also testified that electric and water usage were included as part of the agreement at no additional charge. In copious detail he explained that the atrium adjoined another commercial space owned by respondent, separated only by an unsecured roll down gate, and described how he ran electrical wiring from the store to the meter in the basement to provide lighting in the atrium and operate his rose stripping machine, credit card machine and heaters. He also installed a plumbing line from the water sink in the store to the water meter in the basement for watering the flowers.
*545 Mr. Soibelman testified that he received the keys to the atrium from Raphel Cohen upon making his first payment of $800 in October 2007 and that he, or one of his employees, paid the rent in cash to Mr. Cohen for the months of October 2007 through March 2008.
Mr. Soibelman testified credibly that on March 17, 2008 he received two phone calls from an unidentified caller who stated that his possessions would be thrown out on the street if he did not remove them from the premises immediately. Mr. Soibelman testified that when he arrived at the premises at about 12:00 noon the door to the atrium had been taken off, the basement had been padlocked, the electric wires had been cut, and the water pipes had been broken. Photographs depicting the atrium without a door, the padlocked basement, and the cut utility connections were proffered into evidence. On cross-examination, he testified that as part of the agreement he would also perform demolition work on the stores adjoining the atrium, which were also owned by respondent, in exchange for a long-term lease once the stores were rented.
Moshe Kramer, a former employee appearing on behalf of petitioner, corroborated Mr. Soibelman’s testimony regarding the monthly cash payments of $800 for use of the subject premises. He testified credibly that he did not know the terms of the agreement between the parties; however, he acknowledged that the basement was used by petitioner since it did not have a lock.
In rebuttal, Raphel Cohen, a partner of respondent, Optimum Properties, Inc., testified that petitioner was given the keys to the atrium in October 2007; however, he flatly denied giving petitioner permission to use the basement or permission to use water and/or electricity. He also denied receiving any monetary consideration for the use of the atrium, and instead stated that he gave the petitioner the right to use the atrium in exchange for demolition and debris removal of the two vacant stores adjoining the atrium that he wanted to prepare for rental. He further explained that the agreement of the parties called for the use of the atrium on a temporary basis since the atrium itself was included in the demolition. Contrary to their agreement, however, Mr. Cohen stated that petitioner decreased the size of the atrium instead of demolishing it. He claimed that he was forced to replace the petitioner with someone else to have the demolition/debris removal work completed because the petitioner did not complete the agreed upon work.
*546 On cross-examination, Mr. Cohen testified that on March 17, 2008, he could not gain access to the basement because the lock to the atrium had been changed. As a result, he directed that the door of the atrium be removed. He also testified that upon entering the basement he discovered that petitioner had electrical and plumbing line connections hooked up to the respective meters. He claimed that these hookups were unauthorized, illegal, and amounted to a “theft of services.” As a result, he admittedly directed the cutting of all electrical wiring running from the atrium to the basement and cutting of the water pipes running from the sink inside the store to the basement. Thereafter, he testified that he padlocked the basement door and replaced the lock on the atrium door with the original lock that had been on the door at the time the parties entered into their agreement. Mr. Cohen testified that he was accompanied by a guard at the premises when he implemented these various measures resulting in petitioner’s removal from the premises.
Based on the evidence adduced at trial, the dispositive issue in this case is whether the agreement between the parties constituted either an oral lease creating a month-to-month tenancy, or was petitioner merely granted a license to utilize subject space. Secondarily, if a license was created, the court must determine the nature and extent of the permission granted. While both petitioner and his employee testified that respondent was paid $800 monthly for the use of the atrium and basement, the court finds that a landlord-tenant relationship was not created. “The central distinguishing characteristic of a lease is the surrender of absolute possession and control of property to another party for an agreed-upon rental” (see Nextel of N.Y. v Time Mgt. Corp., 297 AD2d 282, 282 [2002]). “A licensed on the other hand,] gives no interest in land. It confers only the nonexclusive, revocable right to enter the land of the licensor to perform an act” (id.; see Maffetone v Micari, 205 Misc 459 [1954]).
What emerges from the divergent testimony of both parties in this matter is that petitioner had a license to use the atrium and basement which included electric and water usage. The evidence shows that the respondent permitted the petitioner to use the atrium for the purpose of selling flowers and that use of the atrium was temporary and contingent upon the ability of the landlord to rent the adjacent stores. Essentially, the atrium is an appurtenance adjoining the landlord’s two commercial buildings. A thing “appurtenant” is defined to be a thing used with *547 and related to or dependent upon another thing more important, and agreeing, in its nature and quality, with the thing whereunto it is appendant or “appurtenant.” Plainly stated, the atrium together with the basement was not a leasehold characterized by exclusivity and absolute use, since the keys which were initially given to petitioner by the respondent accessed both the atrium and the basement. The court is unpersuaded by respondent’s argument that petitioner’s use of the basement constituted a trespass. Respondent made no attempt to secure the basement entry from the time petitioner began occupying the subject premises through March 17, 2008, the day of the lock out, thus, permitting unfettered access to the basement. Additionally, the court finds that at all times prior to March 17, 2008, respondent visited the premises at least twice a week and knew or had reason to know that the basement was being used. The photographs proffered into evidence showed electrical lines and plumbing “hook-ups” running from the atrium to the basement that were in plain view. In light of these facts, the court finds it difficult to fathom that respondent was oblivious to petitioner’s use of the basement and utilities over a six-month period.
While respondent had the right to terminate petitioner’s license at will, respondent did not provide notice and, therefore, failed to properly effectuate a revocation of petitioner’s license (see RPAPL 713). Accordingly, respondent’s actions, including the telephone calls with the intent to harass and intimidate, the padlocking of the basement entry door, and the shutting off of the utility services, amounted to nothing more than self-help and constituted an unlawful eviction.
Petitioner moves for treble damages pursuant to RPAPL 853 based on the unlawful eviction. The statute provides:
“If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer” (RPAPL 853).
This court, in its discretion, would be inclined to an award of treble damages in the case at bar, since the self-help tactics of respondent contravene our system of laws which cannot be condoned (see Clinkscale v Sampson, 48 AD3d 730 [2d Dept 2008]; Lyke v Anderson, 147 AD2d 18 [1989]). However, the rec *548 ord demonstrates that petitioner failed to prove any actual damages. While there was some testimony that cash payments representing use and occupancy were made during certain periods, no objective proof was submitted by petitioner to establish damages during the lock-out period. In addition, although petitioner submitted evidence showing that it was unable to receive flower orders transmitted electronically, no evidence was proffered regarding the value of petitioner’s lost profits.
Based on the foregoing, the motion is granted to the extent that respondent is hereby directed to restore petitioner to possession of the subject premises forthwith, and in all other respects, is denied.