A. W. Fiur Co., Inc., Appellant, v Ataka & Co., Ltd., et al., Respondents.

First Department, December 13, 1979

## APPEARANCES OF COUNSEL

*Louis Zlotolow* of counsel (*Douglas Heller* with him on the brief; *Friedman, Krauss & Zlotolow,* attorneys), for appellant.

*Eugene J. Moran* of counsel *(Moran & Broderick,* attorneys), for respondents.

### OPINION OF THE COURT

FEIN, J.

Plaintiff is engaged in the business of acting as sales agent or representative for the sale of fabrics. Sometime in 1974 plaintiff and defendant Ataka & Co., Ltd. (Ataka) engaged in negotiations pursuant to which plaintiff agreed to act as Ataka's nonexclusive sales agent for fabrics sold in the United States and Canada. During the period of the negotiations plaintiff acted as such sales agent and representative and was paid the stipulated commission for such services. After plaintiff and Ataka had agreed upon the terms of the proposed contract, and it was reduced to writing, Ataka advised the plaintiff that the written contract would be required to be executed by Ataka America, Inc. (America) because of Japanese currency laws and American tax laws.

It is undisputed that America is a wholly owned subsidiary of Ataka and that the officer who negotiated the contract was an employee of Ataka in whose presence in Japan it was signed by plaintiff. It was then forwarded to New York and signed on behalf of America by an individual who had no part in its negotiation. It is also undisputed that all of the communications between the plaintiff and the defendants respecting performance of the contract were with Ataka. Only its forms were used. It issued all instructions, letters, telexes and other communications. All orders were submitted to, accepted and approved by Ataka. All sales notes were issued by Ataka, which conducted the entire business relationship with plaintiff. The sole function performed by America was to pay plaintiff's commissions after the statements were furnished to and approved by Ataka.

The written agreement for a period of one year commencing October 1, 1974 and to "remain in effect" until September 30, 1975, provided that it was to be "automatically renewed for a successive period of one (1) year, unless prior to the expiration date of any such period, either party shall notify the other in writing * * * at least three (3) months prior thereto, of the intention not to renew."

In pertinent part the writing also provided that plaintiff was to be the nonexclusive sales agent for the fabrics sold in the United States and Canada, and America reserved "the

absolute and exclusive right to reject any orders for any reason whatsoever, including, but not limited to credit."

In August, 1976, defendants proposed that plaintiff become Ataka's exclusive sales agent and undertake responsibility for providing letters of credit. In effect the proposal would have required the plaintiff to become the United States and Canadian importer of Ataka's fabrics rather than a sales agent. When plaintiff declined to enter into the proposed new relationship, the officer of Ataka, who was also the officer of America with whom plaintiff conducted the business, orally advised plaintiff "that Ataka would, thenceforth, be in no position to furnish plaintiff with Ataka fabrics since Ataka had decided, on the basis of plaintiff's rejection of my proposal that the plaintiff become the sole agent for sale of Ataka fabrics in the United States, to close down the business of exporting its fabrics to the United States." No further orders were to be accepted. Ten months later, on June 28, 1977, America advised plaintiff in writing that America would not renew the agency agreement beyond September 30, 1977.

The complaint, purporting to allege three separate causes of action, seeks compensatory, punitive and consequential damages for the period August, 1976 through September, 1977. Special Term, in granting defendants' motion for summary judgment, dismissed the complaint as against Ataka on the ground that it was not a signatory or a party to the written contract, and dismissed the complaint as against America upon the ground that despite the probable existence of a "technical breach of said contract or agreement" because of the premature termination, plaintiff would be unable to show damage because defendants' choice to discontinue the textile export operation was tantamount to the rejection of any orders supplied by the plaintiff which defendants reserved the right to do.

■ Special Term erred in dismissing the complaint as against Ataka upon the ground that it was neither a signatory to the written contract nor named as a party to it. It is clear that practically all of the dealings with respect to the contract and its performance were had with Ataka and not with America, including the actual approvals of the orders taken. Although the complaint barely tenders this issue, sufficient is alleged in the complaint, supported by affidavits and documentary evidence, most of which is undisputed, to at least raise a question whether Ataka so controlled the actions of America

that unitary liability to the plaintiff arising from the actions of the defendants could be imposed on both corporations. A parent corporation may not be held liable for the contracts of its subsidiary solely because of stock ownership *(Berkey v Third Ave. Ry. Co.,* 244 NY 84). A corporation, however, may become an actor in the whole business of a subsidiary corporation. When this occurs it will be legally responsible *(Van Valkenburgh, Nooger & Neville v Hayden Pub. Co.,* 30 NY2d 34). A subsidiary corporation over which the parent corporation exercises control in everyday operations may be deemed an instrumentality or agent of the parent *(Rapid Tr. Subway Constr. Co. v City of New York,* 259 NY 472). The determinative factor is whether the subsidiary corporation is a dummy for the parent corporation *(Port Chester Elec. Constr. Corp. v Atlas,* 40 NY2d 652; *Astrocom Electronics v Lafayette Radio Electronics Corp.,* 63 AD2d 765).

■ ■ If a breach of contract is proven, there is a triable issue as to the liability of Ataka as well as America.

■ Although the contract conferred upon America the "absolute and exclusive right to reject any orders for any reason whatsoever", such a contract does not import the right arbitrarily to refuse to accept orders (see *Nat Nal Serv. Stas. v Wolf,* 304 NY 332; *Taylor v Morgan's Sons Co.,* 124 NY 184, 188). There is an obligation in every contract requiring the parties to deal in good faith with each other. "There is implicit in all contracts * * * an implied covenant of fair dealing and good faith *(Brassil v. Maryland Cas. Co.,* 210 N. Y. 235; *Wilson v. Mechanical Orguinette Co.,* 170 N. Y. 542)" *(Van Valkenburgh, Nooger & Neville v Hayden Pub. Co.,* 30 NY2d, at p 45, *supra; Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79; *Underhill v Schenck,* 238 NY 7). Whether such obligation of good faith and fair dealing always requires either party to the contract to continue in business is not free from doubt *(407 East 61st Garage v Savoy Fifth Ave. Corp.,* 23 NY2d 275). However, if termination of the business is occasioned solely by reason of the other party's unwillingness to modify the contract, it is not a defense in an action for breach of contract that the party against whom performance is sought has discontinued the particular business which is the subject of the contract.

An agreement for the rendition of service to a business implies a promise that the party to whom the services are rendered will continue to remain in business *(407 East 61st*

*Garage v Savoy Fifth Ave. Corp., supra).* Such a promise will be implied particularly where the other party has undertaken burdens or obligations in expectation of and in reliance upon the promisor's continued activity. A change in the method of business operations during the term of a contract, where such change prevents rendition of the services by the other party to the contract, constitutes a breach of contract, importing damages *(407 East 61st Garage v Savoy Fifth Ave. Corp., supra; West, Weir & Bartel v Carter Paint Co.,* 25 AD2d 81, 86, app dsmd 19 NY2d 812). As these and other cases hold, a party may not abrogate a contract unilaterally merely by showing it would be financially disadvantageous to perform it.

█ In effect, Special Term acknowledged this principle in describing the notification of the discontinuance of the export business as "a technical breach of said contract or agreement * * * in that it terminated the same prematurely". However, relying on the provisions of the contract permitting rejection of orders "for any reason whatsoever", Special Term concluded that plaintiff would be unable to prove damages. Difficulty in proof of damages is not a ground for dismissing a complaint on a motion for summary judgment. Proof of damages is essentially an issue of fact. The function of summary judgment is issue finding, not issue resolution *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395). Where a change in the method of doing business results in a breach of contract, such damages as are sustained are recoverable for the balance of the term despite difficulties in proof *(West, Weir & Bartel v Carter Paint Co., supra).*

█ █ Special Term accordingly improperly granted summary judgment holding in effect that there was no issue of fact as to whether there was a breach of contract or damages. A triable issue is plainly presented whether defendants' withdrawal from the export business constituted a breach of contract entitling plaintiff to damages. If a breach is found, plaintiff would be entitled to recover such damages as it can prove through September 30, 1977, since it is undisputed that defendants failed to give plaintiff three months' written notice of intention not to renew.

█ █ In granting defendants' motion for summary judgment on the stated grounds, Special Term did not reach the second cause of action alleging punitive damages. There is no independent cause of action for punitive damages, and accordingly the second cause of action must stand dismissed *(Bunker v*

*Bunker,* — AD2d —; *Goldberg v New York Times,* 66 AD2d 718; *Ferrucci v State of New York,* 42 AD2d 359, 362, affd 34 NY2d 881). The third cause of action as pleaded, also not reached by Special Term, does not state an independent cause of action. The allegations thereof are essentially a different way of pleading the first cause of action for breach of contract. Accordingly the second and third causes of action stand dismissed.

█ In its cross motion plaintiff sought leave to serve an amended complaint adding a fourth cause of action alleging a breach other than that set forth in the first cause of action. The breach alleged relates to alleged failure of the defendants to make deliveries prior to the date defendants notified plaintiff of the termination of the export business. On its face the proposed fourth cause of action appears to state a proper cause of action supported by a sufficient affidavit. Accordingly, plaintiff's cross motion for leave to serve an amended complaint adding such cause of action should be granted.

Accordingly, the order, Supreme Court, New York County GROSSMAN, J.), entered March 14, 1979, granting defendants' motion for summary judgment and denying plaintiff's cross motion for summary judgment and for leave to amend its complaint, should be modified, on the law and the facts, to deny defendants' motion for summary judgment dismissing the first cause of action and to grant plaintiff's motion for leave to amend its complaint, and otherwise affirmed, without costs.

KUPFERMAN, J. P., BIRNS, SANDLER and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County entered on March 14, 1979, modified, on the law and the facts, to deny defendants' motion for summary judgment dismissing the first cause of action and to grant plaintiff's motion for leave to amend its complaint, and otherwise affirmed, without costs and without disbursements.