USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 97-1038 GERALD R. SWIRSKY, Plaintiff, Appellant, v. NATIONAL ASSOCIATION OF SECURITIES DEALERS, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT  FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Selya and Lynch, Circuit Judges, ______________ and Gibson,* Senior Circuit Judge. ____________________ ____________________ Gerald A. Phelps for plaintiff-appellant. ________________ David C. Fixler, with whom Michael Unger and Rubin & Rudman LLP ________________ _____________ __________________ were on brief, for defendant-appellee. ____________________ August 28, 1997 ____________________  ____________________ * Hon. John R. Gibson of the Eighth Circuit, sitting by designation. LYNCH, Circuit Judge. This case presents an issue LYNCH, Circuit Judge. _____________ of first impression for this circuit concerning whether the doctrine of exhaustion of administrative remedies applies in certain actions against the National Association of Securities Dealers ("NASD"). We hold that it does, in agreement with the other circuits which have faced this issue. We therefore affirm the district court's dismissal of the actions because Mr. Swirsky failed to follow the proper review process in litigating this dispute. I. Background Gerald R. Swirsky worked for Prudential Securities Inc. as a broker until November of 1992. In November of 1990, Swirsky and Prudential were parties to a NASD arbitration proceeding ("the Murray Arbitration") brought by one of Swirsky's customers, who accused them of causing her to lose money by concentrating her position in a single, risky stock. The customer was awarded $370,260 in damages jointly and severally from Prudential and Swirsky and punitive damages of $50,000 from Prudential. Swirsky lost his job with Prudential as a result of a comprehensive management restructuring. Tucker Anthony hired Swirsky soon after he left Prudential, and fired him on September 16, 1994. Four days later, the NASD filed a complaint against Swirsky in connection with the Murray Arbitration and complaints by two other former Prudential customers. Prior to the termination of Swirsky's employment, the NASD informed Tucker Anthony (according to Swirsky) that if Tucker Anthony continued to employ Swirsky, Tucker Anthony would be held as a guarantor of Swirsky's conduct. To resolve the NASD complaints, Swirsky, while represented by counsel, executed an Offer of Settlement and Waiver of Procedural Rights, without admitting any guilt, on October 21, 1994. Swirsky avers that during the settlement negotiations he was unaware of the NASD's "threat" to hold Tucker Anthony liable as Swirsky's guarantor. Swirsky apparently only learned of this communication through a letter from the General Counsel of Tucker Anthony dated February 8, 1995.  According to the terms of the settlement agreement, Swirsky was fined $10,000, suspended from association with any NASD member firm for ten days, and waived all rights to appeal. The National Business Conduct Committee of the NASD Board of Governors ("NBCC") approved this settlement agreement, and the local NASD District Business Conduct Committee ("DBCC") issued a Decision and Order of Acceptance of Offer of Settlement on January 9, 1995. The NASD filed the settlement with the Securities Exchange Commission ("SEC") on March 2, 1995. -3- 3 Swirsky, represented by different counsel, filed a Motion to Vacate Decision and Order of Acceptance of Offer of Settlement with the NBCC on May 2, 1995. Swirsky asserted a host of claims.2 The NBCC denied Swirsky's motion to vacate on July 10. Swirsky appealed to the SEC, alleging the same claims as in his motion to the NBCC. The SEC declined to review the NBCC decision because Swirsky's motion to vacate was untimely.3 Swirsky brought suit in federal district court on October 11, 1995. The district court characterized Swirsky's complaint as "essentially a collateral attack on a settlement he has been unable to undo through the established  ____________________ 2. Swirsky raised the following claims: tortious interference with contract; tortious interference with advantageous relations; fraud; violations of Mass. Gen. L. ch. 93A; defamation; procedural due process violations under the United States Constitution and the Constitution of the Commonwealth of Massachusetts; violations of 42 U.S.C.  1983; violations of Mass. Gen. L. ch. 12 11H and 11I; and violations of sections 6(d)(1) and 15A(h)(1) of the Exchange Act. 3. In a letter dated September 7, 1995, the SEC stated the following: Under Section 19(d)(2), an application for review is to be filed within 30 days after the date notice of the action is filed with the Commission and received by the aggrieved person. Even if Swirsky could be considered aggrieved by a settlement to which he consented, he was obliged to file an application for review within 30 days of the filing of notice of the action. Swirsky did not seek Commission review of the action within the 30-day period and has made no showing for the Commission to consider the extraordinary relief necessary for a filing outside of the normal time limits. -4- 4 administrative process." Memorandum and Order at 1. The district court dismissed the complaint because Swirsky had failed to exhaust his administrative remedies. Under the process established by the Exchange Act, the district court said, Swirsky should have appealed the adverse SEC decision in federal circuit court. Swirsky now appeals. II. The Exchange Act The Securities Exchange Act of 1934 and its subsequent amendments create a detailed, comprehensive system of federal regulation of the securities industry. The system's foundation is self-regulation by industry organizations established according to the guidelines of the Maloney Act. The NASD is a national securities association registered with the SEC pursuant to the Maloney Act which provides self-regulation of the over-the-counter securities market. See 15 U.S.C. 78o-3. ___ The Exchange Act mandates a three-tiered process of both administrative and judicial review of NASD disciplinary proceedings. At the first level, proceedings are conducted by the local DBCC with appeal to, and de novo review by, the NBCC. The Maloney Act prescribes an array of procedural safeguards to ensure fairness at this first tier of review. The NASD must "bring specific charges, notify such member or person of, and give him an opportunity to defend against, such charges, and keep a record." 15 U.S.C. 78o -3(h)(1).  -5- 5 The NASD is authorized to impose a number of sanctions, including censure, fines, suspension, or prohibition from association with member firms. 15 U.S.C.  78o-3(b)(7); NASD Rules of Fair Practice, Art. V, 1. In addition to these specific sanctions, the NASD may impose "any other fitting sanction deemed appropriate under the circumstances." Id. Sanctions must be supported by written ___ statements specifying the activity that caused the violation, the specific provision or rule violated, and the reason for the sanction imposed. At the second level, the SEC reviews NBCC final orders de novo. 15 U.S.C. 78s(d). Once the NBCC files its decision with the SEC, disciplinary respondents have 30 days to petition the SEC for review. 15 U.S.C. 78s(d)(2). The SEC can affirm or modify any sanction, or remand to the NASD for further proceedings. 15 U.S.C. 78s(e). The SEC is empowered to seek an injunction in district court if the NASD "is engaged or is about to engage in acts or practices constituting a violation" of the securities laws. 15 U.S.C. 78u(d). The SEC may "censure or impose limitations upon the activities, functions and operations" of self-regulatory organizations (such as the NASD) that violate the Exchange Act, the rules thereunder, or its own rules. 15 U.S.C.  78s(h)(1). The SEC may remove any officer or director of a self-regulatory organization from office if he or she is -6- 6 found to have violated the rules or abused his or her position. 15 U.S.C. 78s(g)(2). The NASD is also subject to extensive, ongoing oversight and control by the SEC. See United States v. NASD, ___ _____________ ____ 422 U.S. 694, 700-01 n.6 (1975) (The Act "authorizes the SEC to exercise a significant oversight function over the rules and activities of the registered associations."). With few exceptions, the SEC must approve all rules, policies, practices, and interpretations before they are implemented. 15 U.S.C. 78s(b)(1). Consistent with the requirements of the Exchange Act, the SEC may abrogate or add rules as it deems necessary. 15 U.S.C. 78s(b)(3). The SEC may also suspend or revoke the license of any national securities organization which fails to enforce compliance with the Exchange Act, SEC regulations, or the organization's own rules. 15 U.S.C. 78s(h)(1). The third tier of the process provides for review of final SEC orders by the United States Courts of Appeals. 15 U.S.C. 78y(a); see Mister Discount Stockbrokers, Inc. v. ___ __________________________________ SEC, 768 F.2d 875, 876 (7th Cir. 1985) (stating that "final ___ orders of the Commission are reviewable only in the United States Courts of Appeals"). Congress believed that this three-tiered process founded upon self-regulation would garner several benefits, including "the expertise and intimate familiarity with complex securities operations which -7- 7 members of the industry can bring to bear on regulatory problems, and the informality and flexibility of self- regulatory procedures." S.Doc. No. 93-13, 93d Cong., 1st Sess. 149 (1973). III. The Merits The Exchange Act creates a comprehensive procedure to safeguard due process in disciplinary hearings, and for administrative and judicial review of NASD disciplinary actions. We agree with other circuits that have considered the question that the "comprehensiveness of the review procedure suggests that the doctrine of exhaustion of administrative remedies should be applied to prevent circumvention of established procedures." First Jersey _____________ Securities, Inc. v. Bergen, 605 F.2d 690, 695 (3rd Cir. _________________ ______ 1979). See Merrill Lynch v. NASD, 616 F.2d 1363, 1370 (5th ___ ______________ ____ Cir. 1980); see also Nassar & Co. v. SEC, 566 F.2d 790, 792 ________ ____________ ___ n.3 (D.C. Cir. 1977); Roach v. Woltmann, 879 F. Supp. 1039, _____ ________ 1041-42 (C.D. Cal. 1994); Maschler v. National Ass'n of ________ __________________ Securities Dealers, Inc., 827 F. Supp. 131, 132 (E.D.N.Y. _________________________ 1993); Prevatte v. National Ass'n of Securities Dealers, ________ _______________________________________ Inc., 682 F. Supp. 913, 918 (W.D. Mich. 1988). Because ____ Swirsky failed to invoke the third tier of the review process, the district court lacked subject matter jurisdiction, and it properly dismissed Swirsky's complaint. -8- 8 The doctrine of exhaustion of remedies is stated starkly in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. _____ ____________________________ 41, 50-51 (1938), where the Supreme Court noted the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (footnote omitted). The central purpose of this doctrine is "the avoidance of premature interruption of the administrative process." McKart v. United States, 395 U.S. ______ _____________ 185, 193 (1969). See Portela-Gonzalez v. Secretary of the ___ ________________ ________________ Navy, 109 F.3d 74, 79 (1st Cir. 1997) ("Insisting on ____ exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether."); Ezratty v. Commonwealth _______ ____________ of Puerto Rico, 648 F.2d 770, 774 (1st Cir. 1981) (stating _______________ that "the doctrine serves interests of accuracy, efficiency, agency autonomy and judicial economy."). Exhaustion is required if explicitly mandated by Congress, McCarthy v. Madigan, 503 U.S. 140, 144 (1992), but ________ _______ courts may relax this requirement somewhat where Congress is silent. Darby v. Cisneros, 509 U.S. 137, 153-54 (1993). _____ ________ There are "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." McCarthy, 503 U.S. at 146. ________ -9- 9 These exceptions are when the requirement occasions undue prejudice to subsequent assertion of a court action; where the agency is not empowered to grant effective relief; and when there are clear indicia of agency bias or taint. McCarthy at 146-48. See Portela-Gonzalez, 109 F.3d at 77 ________ ___ ________________ (1st Cir. 1997). None of these exceptions applyto this case. Before examining the exceptions to administrative exhaustion listed above, we refute Swirsky's threshold claim that he could not appeal the SEC decision because it did not constitute a "final order." On the contrary, the SEC letter is an adjudication of Swirsky's motion to vacate the settlement agreement. The SEC declined to review the NBCC's decision not to vacate the settlement agreement on the ground that Swirsky's petition was time-barred. Though based on procedural grounds, the SEC's ruling on Swirsky's petition is final, and Swirsky could have appealed this decision. Swirsky's clearest argument that the exhaustion doctrine should not apply to this case is rooted in allegations that the NASD is biased against him. This argument consists of little more than the assertion that, because the NASD is the defendant in this action, it could not possibly provide him with a fair hearing. We do not believe that this is enough to demonstrate the kind of -10- 10 thoroughgoing taint which concerned the Supreme Court in McCarthy.4 The review process here provides for both SEC and ________ court of appeals review after the NASD determination, not to mention review by the NBCC, a separate entity from the DBCC. Swirsky has not accused the SEC or this court of unacceptable bias against him. Though it can be unsettling, it is not uncommon in administrative law for a litigant's case to be heard in the first instance by the very agency against which the plaintiff has a complaint. In this case, resort to the correct appeals procedure would not have been a "futile act." See Portela-Gonzalez, 109 F.3d at 78-80 (plaintiff required ___ ________________ to pursue her claim to "the final rung of the administrative ladder," despite the fact that she had been rebuffed at all prior stages). Neither is resort to the proper review process futile in the sense that Swirsky could not have received the relief he sought. The SEC has extensive powers to modify, reverse and enjoin disciplinary actions by the NASD. As the Third Circuit has said, "Ultimate review by the court of appeals ensures that constitutional or statutory errors will not go unremedied." First Jersey Securities, Inc., 605 F.2d _____________________________ at 696. See SEC v. Waco Financial, Inc., 751 F.2d 831, 833 ___ ___ _____________________  ____________________ 4. See McCarthy, 503 U.S. at 148 (citing Houghton v. ___ ________ ________ Shafer, 392 U.S. 639, 640 (1968), where administrative review ______ procedure culminated with the Attorney General, who had __________ already expressed his views on the merits). -11- 11 (6th Cir. 1985) ("By preserving the issue before the NASD bodies and the SEC the appellants could have obtained direct judicial review of their constitutional claims following all administrative steps."). Swirsky attempts to avoid these doctrines by distinguishing his action in district court from that before the NASD and SEC. Swirsky's claims are, however, essentially the same as those he raised before the NASD and the SEC in his motion to vacate the settlement agreement.5 Swirsky argues that the harms he suffered as a result of the NASD's "threat" to Tucker Anthony give rise to independent causes of action, analogous to causes of action he would have if a NASD employee had punched him in the nose during the course of the disciplinary complaint. Assaults are not a part of the NASD's regulatory arsenal, but it is clear that the NASD's communication to Tucker Anthony arose out of a disciplinary action by the NASD. Swirsky's analogy is inapt. IV. Conclusion Swirsky's proper course of action, once the SEC denied his appeal, was to appeal to this court. He did not do so. Swirsky reached this court by a different, and incorrect, route. At oral argument, Swirsky's counsel stated that it was "ironic" that this case was now before the First  ____________________ 5. We note that Swirsky was alerted to the NASD "threat" before the settlement agreement was filed with the SEC. ______ -12- 12 Circuit. The irony instead lies in the fact that Swirsky asks this court to do what he claims could not be done via the proper review process -- a process that should have culminated here. The decision of the district court is affirmed. ________ -13- 13