[723 NYS2d 151]

ELSA MAYES et al., Respondents, v UVI HOLDINGS, INC., et al., Appellants.

First Department, March 22, 2001

### APPEARANCES OF COUNSEL

*Julie T. Mark* of counsel (*Brian J. Isaac* and *Herbert S. Subin* on the brief; *Subin Associates, L. L. P.,* and *Pollack, Pollack, Isaac & DeCicco,* attorneys), for respondents.

*Bruce H. Lederman* of counsel (*Lederman Abrahams Lederman & Zarett, L. L. P.,* and *Mendes & Mount, L. L. P.,* attorneys), for UVI Holdings, Inc. and another, appellants.

*Rizpah A. Morrow* for Marshal Rita Herzog, appellant.

*Fred Ehrlich* of counsel (*Fred Ehrlich, P. C.,* attorneys), for Mujica & Goodman and another, appellants.

**OPINION OF THE COURT**

RUBIN, J.

Plaintiffs, lessees and occupants of an apartment owned by defendant UVI Holdings, Inc. and located at 406 West 56th Street, commenced this action to recover damages for their eviction on July 9, 1996, which was previously found to have been wrongful because executed on an invalid warrant. The action is prosecuted against the corporate owner, together with the managing agent for the premises, Arthur Haruvi, who is also the president of UVI Holdings (collectively, the landlord); against their attorneys, the firm of Mujica & Goodman and Jacob Goodman, individually (collectively, the law firm); and against former New York City Marshal Rita Herzog, who carried out the eviction.

The amended complaint states nine causes of action. Six of these (first through fourth, sixth and seventh) name all defendants and seek damages, respectively, for wrongful eviction pursuant to RPAPL 853, property damage, intentional infliction of emotional distress, conversion, negligence and negligent infliction of emotional distress. In addition, plaintiff tenant seeks damages from the landlord for personal injury (fifth cause of action) allegedly sustained when a portion of a ceiling fell on her back several days prior to her eviction, and all plaintiffs assert claims (eighth and ninth causes of action) of fraudulent misrepresentation and malpractice against the law firm, predicated on its failure to obtain a valid warrant of eviction. The landlord similarly asserts a cross claim against the firm for malpractice, and seeks contribution and indemnification from the Marshal. Marshal Herzog asserts cross claims against the law firm, by reason of its failure to apply for a valid warrant, and against the landlord, seeking indemnification pursuant to a written indemnification agreement and on the basis of the landlord's ratification of her acts as its agent. Finally, the law firm seeks contribution and indemnification from the other defendants.

This matter is before this Court on appeal by the law firm from the denial of its motion for summary judgment dismissing the complaint and from the grant of summary judgment to the landlord on its cross claim for legal malpractice; on cross appeal by the landlord from the denial of its motion to dismiss plaintiffs' claims for punitive and treble damages; and on cross appeal by the Marshal from the denial of her respective cross motions seeking dismissal of plaintiffs' claims and for summary judgment against the law firm. Analysis of these disposi-

tions is not aided by plaintiffs' failure to specify that they sought partial summary judgment with respect to their first cause of action as opposed to summary judgment with respect to all claims professed to constitute causes of action. In addition, plaintiffs neglected to submit any reply to the respective cross motions for dismissal, instead limiting their response to the cross motion by defendant law firm seeking sanctions against plaintiffs for their pursuit of assertedly "frivolous" claims.

The facts are largely a matter of record. In February 1996, the landlord commenced a summary proceeding to recover possession of real property on the grounds of nonpayment of rent. The record reflects that a demand for rent dated January 24, 1996 had previously been served on plaintiff tenant by certified mail. The petition recites that rent is past due for the period from September 1995 through February 1996 in the amount of $2,254.39. The record contains an affidavit of conspicuous service dated February 29, 1996. The petition, which was filed the same day, bears the stamped legend "Postcard notice mailed by Court Clerk." It is uncontested, however, that plaintiff tenant failed to appear in response to the petition and notice of petition and that judgment of possession was duly entered against her by default on April 15, 1996. A 72-hour notice of eviction was served on April 24. Two days later, plaintiff obtained an order to show cause staying the proceedings and execution of the warrant of eviction. Her application was set down for hearing on May 5, at which time the parties entered into a detailed stipulation providing for scheduled repairs and periodic rent payments as the repairs progressed. In accordance with the terms of the stipulation, the judgment and warrant of eviction were vacated.

The landlord subsequently brought a motion returnable June 19, 1996 seeking a final judgment of possession, warrant of eviction and monetary judgment for rent due. The affidavit of defendant Haruvi states that plaintiff tenant had not satisfied the rent arrears in accordance with the stipulation and had refused access so that the stipulated repairs could be performed. The affidavit of service attests that the motion was served upon plaintiff by mail on June 5. On the return date, a final judgment was issued, again upon plaintiff tenant's default in appearance, awarding possession to the landlord, together with $3,669.93 for past rent, and staying issuance of a warrant of eviction for five days.

There is no evidence to suggest that any further warrant was obtained. The record contains only a notice of legal posses-

sion dated July 9, 1996, issued by Marshal Herzog, and the ensuing order to show cause obtained by plaintiff tenant on July 15. Upon hearing the application, Civil Court (Arlene Hahn, J.) held that plaintiff tenant was evicted illegally noting, "The court has no record of a new warrant being issued for the later judgment." The court directed that plaintiff be restored to possession and stated, in its ruling, that the landlord "was offered an opportunity, to implead or call the Marshal on an adjourned date, which offer petitioner twice decline[d]." No appeal has been taken from this order.

It is not disputed that by the time plaintiff tenant applied for the second order to show cause, repairs to the apartment had proceeded to the point where it had been gutted or, as alleged by plaintiffs in the complaint, "the Apartment was destroyed and all their belongings were gone. The walls and fixtures were all removed and their apartment was strewn with rubble."

It is law of the case that no application for a new warrant was ever made in connection with the second judgment of possession. The record contains no documentation with respect to the warrant of eviction actually executed by the Marshal. A secretary for the law firm testified that she thought she had mailed a copy of the stipulation vacating the first judgment and warrant of eviction to the Marshal. However, no copy of an accompanying cover letter has been produced, which the witness testified would have been included as a matter of the firm's "general procedure." Nor could the witness state when the stipulation might have been sent to the Marshal. Significantly, the record does contain a cover letter dated August 23, 1996, directed to the Marshal from the law firm, which enclosed the judgment of possession. The cover letter bears the anonymous handwritten notation, "good warrant 8/26/96." It is not clear what the law firm was attempting to accomplish by means of this correspondence.

■■ Whether plaintiffs' eviction on an invalid warrant was deliberate or inadvertent, there is no question that neither the landlord nor its attorneys can evade responsibility for the wrongful eviction. Generally, a landlord "is not responsible for the manner in which an officer executes a valid process duly issued * * * the officer only becomes his agent where the process is irregular, unauthorized, or void" (*Ide v Finn*, 196 App Div 304, 314-315; *see also, Campbell v Maslin*, 91 AD2d 559, 560, *affd* 59 NY2d 722 *for reasons stated below*). Civil Court has ruled that plaintiff tenant was wrongfully evicted from her apartment based upon a void warrant. On a previous appeal in

the instant action, this Court held that the landlord was afforded "a full and fair opportunity to litigate the issue of its wrongdoing in Civil Court" and is collaterally estopped to dispute its liability (268 AD2d 209). Moreover, as lessor, the landlord is liable to its tenant for any contract damages plaintiff sustained as a result of the breach of her lease.

It is a principle of long standing that conduct of litigation is the prerogative of counsel. As stated in *Hallock v State of New York* (64 NY2d 224, 230), "From the nature of the attorney-client relationship itself, an attorney derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions *(see* Code of Professional Responsibility, EC 7-7; *Gorham v Gale*, 7 Cow 739, 744; *Gaillard v Smart*, 6 Cow 385, 388)." It is counsel's responsibility to maintain control over the proceedings; to this end, counsel is chargeable with the misuse of process by agents employed to further the course of litigation, even if liability is only vicarious *(see, Kleeman v Rheingold*, 81 NY2d 270, 276).

It is of no moment that, in the proceedings conducted before Civil Court, the landlord's interests were represented by a party which is an adversary in the present litigation. The rule of collateral estoppel incorporates sound public policy considerations, including the need to "conserve the resources of courts and litigants" (*Gilberg v Barbieri*, 53 NY2d 285, 291). That a particular outcome resulted from some misconduct on the part of counsel does not warrant disturbing a ruling to revisit an issue decided against a party that was "accorded a full and fair opportunity to contest the issue" (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276, *cert denied* 488 US 1005). Under such circumstances, the clients "are relegated to relief against their former attorney for any damages which his conduct may have caused them" (*Hallock v State of New York, supra*, at 230). Because the law firm cannot delegate its responsibility to supervise the litigation, liability to its client may be imposed as a matter of law (*id.; Da Silva v Suozzi, English, Cianciulli & Peirez*, 233 AD2d 172, 177).

As between the law firm and the Marshal, the firm, as the entity in control of the litigation, had superior knowledge of its course (*see, Bevona v Judson Realty*, 213 AD2d 349, 350). Thus, the firm bore the responsibility to keep the Marshal informed concerning the status of a warrant that appeared valid on its face (*see, Chelsea Marina v Scoralick*, 94 AD2d 189, 193 [failure to advise Sheriff of temporary restraining or-

der]), and any misapprehension necessarily implicates a lapse by counsel (*supra*, at 195). Furthermore, the Marshal, as an officer of the court, is entitled to rely on the presumption of regularity (*see*, CPLR 4520), which has long been accorded to the conduct of the affairs of her office (*see*, *Burkhard v Smith*, 19 Misc 31 [1896]), and defendant law firm has failed to make a prima facie showing to overcome the presumption by demonstrating that she knowingly or negligently executed an invalid warrant (*cf.*, *De Zego v Donald F. Bruhn, M.D., P. C.*, 67 NY2d 875, 877). Nor do plaintiffs suggest that the outcome should be otherwise. They state that counsel, in the person of Jacob Goodman, "admitted his office instructed the Marshal to execute a warrant that he himself had agreed to vacate, and that led to a 'major screw-up.' The law firm defendants are therefore responsible as a matter of law for the illegal eviction."

Plaintiffs elected to pursue only their first cause of action as a basis for summary judgment. On the question of liability, plaintiffs are entitled to summary judgment against the landlord and its attorneys. The landlord is entitled to summary judgment against the law firm on its claim for legal malpractice and to dismissal of the firm's ordinary defenses predicated on the failure to state a cause of action (denominated the first and second affirmative defenses to the landlord's cross claims). The Marshal is entitled to summary judgment dismissing the complaint as against her, which renders moot her cross claims against the landlord and the law firm. Plaintiffs did not oppose the landlord's cross motion seeking dismissal of their claims for intentional infliction of emotional distress and negligent infliction of emotional distress and, therefore, both their third and seventh causes of action should have been dismissed. The involvement of defendant managing agent in the removal and loss of plaintiffs' possessions raises questions of fact, and he is not estopped by Civil Court's finding that plaintiffs' eviction was wrongful. However, plaintiffs have not filed an appeal, and the dismissal of their first cause of action for statutory damages as against Mr. Haruvi, individually, is not in issue.

It should be noted that while the wrongfulness of plaintiffs' eviction has been resolved against the corporate landlord in Civil Court, the question of damages was neither raised nor addressed. While not evident from the complaint, treble damages for wrongful eviction (now RPAPL 853) have, from the outset, been a matter of statute. Furthermore, the wrong for which the statute imposes enhanced damages is a public as well as a private wrong. "The original statutes on the

subject were solely criminal in their character; and designed only to preserve public peace, and restrain all persons from the use of violent means of doing themselves justice" (*People ex rel. Niles v Smith*, 24 Barb 16, 18 [1857]). The *Smith* court went on to observe that "the remedy has become a private rather than a public one" and that the civil statute (2 RS 338, part III, ch V, tit VI, § 4) provided for the recovery of treble damages for "forcible entry and disseizin" (*id.*, citing *Willard v Warren*, 17 Wend 257). The Court of Appeals later observed that "a right of property merely, not joined with the possession, will not justify the owner in committing an assault and battery upon the person in possession, for the purpose of regaining possession, although the possession is wrongfully withheld * * * This rule is founded upon considerations of public policy, to prevent parties from disturbing the public peace by attempts to right themselves by force instead of resorting to the remedy by action" (*Bliss v Johnson*, 73 NY 529, 533 [1878] [citations omitted]).

The element of force remained a condition of recovery until 1981, when the statute was expanded to encompass ejectments accomplished by either forceful "or unlawful" means (L 1981, ch 467, § 2; *see, Sam & Mary Hous. Corp. v Jo/Sal Mkt. Corp.*, 100 AD2d 901, *affd* 64 NY2d 1107). It is apparent from the memorandum of Assemblyman Richard N. Gottfried in support of the legislation that it was intended to remedy such actions as "removing the tenant's possessions while he or she is out, or by plugging or changing the door lock—actions beyond the narrow legal definition of force" (1981 NY Legis Ann, at 256).

The amendment to the statute has resulted in some variation in the criteria applied in assessing treble damages against a wrongdoer. The Appellate Division, Third Department has permitted the recovery of punitive damages in addition to the statutory treble damages (*Bianchi v Hood*, 128 AD2d 1007, 1008) and endorsed the use of nominal damages where actual damages cannot be established (*O'Hara v Bishop*, 256 AD2d 983, 984). The Appellate Division, Second Department, by contrast, has taken the position that "multiple damage statutes are penal in nature and are to be strictly construed" (*Lyke v Anderson*, 147 AD2d 18, 28), indicating, in dicta, that it would be inappropriate to assess treble damages "where a tenant is dispossessed by 'unlawful means' which are unintentional or which result from a reversal of a determination in the landlord's favor or from a jurisdictionally defective eviction proceeding" (*supra*, at 28, citing *Mannion v Bayfield Dev. Co.*,

134 Misc 2d 1060 [award of treble damages under RPAPL 853 is discretionary, not mandatory]; *e.g.*, *Lemish v East-West Renovating Co.*, 156 AD2d 313, 314 [subsequent reversal and vacatur of warrant]). In the matter under review, no damages have been assessed, and the propriety of the imposition of treble damages against any defendant remains to be evaluated upon a full record after trial (*Maracina v Shirrmeister*, 105 AD2d 672, 673; *see also*, *Rocke v 1041 Bushwick Ave. Assocs.*, 169 AD2d 525).

To the extent that plaintiffs did not intend to abandon their remaining causes of action, they are largely without merit. The claims for property damage, conversion, and negligence, which are asserted against all defendants, do not constitute cognizable causes of action but merely state demands for damages to be considered as elements of the statutory cause of action upon which summary relief is sought (*see*, *Maracina v Shirrmeister*, *supra*, at 673). In an action for wrongful eviction, courts have permitted recovery of damages for loss of property (*e.g.*, *H & P Research v Liza Realty Corp.*, 943 F Supp 328 [customer list]) and even negligent infliction of emotional distress (*Bianchi v Hood, supra* [aggravation of ankle injury]) in addition to traditional damages, measured by the loss of the value of the leasehold (*Randall-Smith, Inc. v 43rd St. Estates Corp.*, 17 NY2d 99).

The separate claim for punitive damages, incorporated into plaintiffs' first cause of action, cannot be maintained. It is settled that "there is no independent cause of action for punitive damages" (*Steinberg v Monasch*, 85 AD2d 403, 405-406, citing *Fiur Co. v Ataka & Co.*, 71 AD2d 370, 375-376). The eighth cause of action for fraudulent misrepresentation, directed against the law firm, is deficient because the asserted misrepresentation as to the status of the warrant is alleged to have been made to the Marshal, not to plaintiffs. To constitute fraud, a misrepresentation must have been knowingly and intentionally made to the plaintiff, whose damages follow from reasonable reliance upon the misstatement (*Megaris Furs v Gimbel Bros.*, 172 AD2d 209, 213).

A direct cause of action by a nonclient against a law firm is not generally cognizable, except where injury is "sustained by a third party as a consequence of the attorney's wrongful or improper exercise of authority, or where the attorney has committed fraud or collusion or a malicious or tortious act" (*Singer v Whitman & Ransom*, 83 AD2d 862, 863). The procurement of an eviction upon an invalid warrant is certainly an "improper

exercise of authority," and may be indicative of collusion between the landlord and its attorneys. Therefore, under the circumstances, a direct action against the law firm is available to plaintiffs. However, as a "wrongdoer" within the meaning of RPAPL 853, the law firm is statutorily liable, and the claim asserted in plaintiffs' ninth cause of action is therefore redundant.

Finally, defendant landlord has not sought dismissal of plaintiff tenant's fifth cause of action against it seeking to recover damages for personal injury. In any event, this claim is unrelated to the wrongful eviction as the injury alleged is stated to have occurred two days prior to her eviction by the Marshal.

As to the issue of sanctions, this Court sees no reason to disturb the findings of Supreme Court that the imposition of sanctions is warranted against Jacob Goodman and his counsel, Fred Ehrlich. The Special Referee appointed to supervise oral examinations submitted a detailed report attesting to an "unending pattern of orchestrated, obstructionist and provocative conduct intended to delay or otherwise obfuscate mandated discovery in this action." On this record, it cannot be concluded that Supreme Court improvidently exercised its discretion in imposing sanctions.

Accordingly, the order of the Supreme Court, New York County (Herman Cahn, J.), entered on or about May 3, 2000, which, to the extent appealed from, as limited by the briefs, granted plaintiffs' motion for summary judgment only to the extent of imposing sanctions against defendant Jacob Goodman and his counsel, Fred Ehrlich; denied defendant Mujica & Goodman's motion for summary judgment dismissing the complaint and all cross claims as against the law firm; granted the motion of defendant UVI Holdings and its president, defendant Arthur Haruvi, for summary judgment on their cross claim against the attorneys for malpractice and granted summary judgment dismissing the attorneys' cross claim against the landlord for contribution or indemnification; and which granted the motion of former City Marshal Herzog to the extent of dismissing plaintiffs' fourth, fifth and sixth causes of action against her, should be modified, on the law, to the extent of granting plaintiffs summary judgment as against defendant law firm and defendant landlord on the issue of liability for wrongful eviction and dismissing plaintiffs' second, third, fourth, sixth, seventh, eighth and ninth causes of action; dismissing the complaint and all cross claims against defendant Marshal Rita Herzog and dismissing, as moot, the

Marshal's cross claims against the landlord and the law firm; granting the landlord summary judgment on its malpractice cross claim against the law firm, dismissing the law firm's first and second affirmative defenses and reinstating its cross claims for contribution and indemnification (denominated the third, fourth and sixth affirmative defenses) as against the landlord—UVI Holdings and its president, Arthur Haruvi individually—and except as so modified, affirmed, without costs. The Clerk is directed to enter judgment in favor of defendant-appellant Marshal Rita Herzog dismissing the complaint and all cross claims as against her.

MAZZARELLI, J. P., ANDRIAS, WALLACH, LERNER, JJ., concur.

Order, Supreme Court, New York County, entered on or about May 3, 2000, modified, on the law, to the extent of granting plaintiffs' motion for summary judgment as against defendant law firm and defendant landlord on the issue of liability for wrongful eviction and dismissing plaintiffs' second, third, fourth, sixth, seventh, eighth and ninth causes of action; dismissing the complaint and all cross claims against defendant Marshal Rita Herzog and dismissing, as moot, the Marshal's cross claims against the landlord and the law firm; granting the landlord summary judgment on its malpractice cross claim against the law firm, dismissing the law firm's first and second affirmative defenses and reinstating its cross claim for contribution and indemnification as against the landlord, and otherwise affirmed, without costs. [As resettled by unpublished order entered May 22, 2001.]