Guy SHAPIRA, Plaintiff,

v.

CHARLES SCHWAB & CO., INC., and National Association of Securities Dealers, Inc., Defendants,

No. 02 Civ. 0425(LAK).

United States District Court, S.D. New York.

Feb. 27, 2002.

David A. Zelman, Law Offices of David A. Zelman, New York City, for Plaintiff.

Charles D. Donahue, Matthew Farley, Drinker Biddle & Reath, LLP, New York City, Terri L. Reicher, National Association of Securities Dealers, Inc., Washington, DC, for Defendant National Association of Securities Dealers, Inc.

Ned H. Bassen, Hughes Hubbard & Reed LLP, New York City, for Defendant Charles Schwab & Co., Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The complaint in this case alleges that plaintiff, an experienced stock broker, applied to defendant Charles Schwab & Co., Inc. ("Schwab") for a job and that he would be hired subject to checking his registration status with the National Association of Securities Dealers, Inc. (the "NASD"). Schwab then inquired of the NASD and checked into plaintiff's background through its own investigator. From one source or the other, Schwab learned that plaintiff had been arrested in June 1999 and then declined to hire plaintiff, expressing concern that plaintiff had not disclosed the arrest or the basis for it on his employment application. Plaintiff claims that the arrest record had been sealed and that the arrest had been terminated in his favor.

Plaintiff then brought this action. The complaint contains six claims for relief.

The first three are against Schwab and are not pertinent to this order. The fourth charges both Schwab and the NASD with defamation. The fifth seeks damages from the NASD on the theory that it disclosed the arrest record to Schwab and thus, according to plaintiff, tortiously interfered with his prospective economic relationship with Schwab. The sixth and final claim is against both Schwab and the NASD and purports to be a stand-alone claim for punitive damages. Schwab moves to dismiss the fourth and sixth claims; the NASD moves to dismiss the action as against it.

*Defamation*

■ The defamation claim alleges that the defendants defamed him by disclosing the fact of his arrest to third parties.[1] Defamation by definition involves the publication of a *false* statement. As plaintiff concedes that he in fact was arrested, the defamation claim is patently insufficient.

*Tortious Interference by the NASD*

■ In order to state a legally sufficient claim for tortious interference with prospective economic advantage, the plaintiff must allege:

> "(1) business relations between the plaintiff and a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with

the sole purpose of harming the plaintiff, or used dishonest, unfair or improper means; and (4) injury to the business relationship."[2]

"Wrongful means include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions, and some degree of economic pressure."[3]

■ Plaintiff claims that the NASD improperly interfered with his proposed employment contract "by unlawfully investigating and disclosing the fact of" his arrest to Schwab.[4] He does not here allege that the NASD acted with the sole purpose of harming him. The more difficult question, assuming that the NASD somehow obtained and disclosed a sealed arrest record, is whether its action in having done so involved wrongful means.

At this stage of the litigation, it is impossible to say. Surely if the NASD ran some routine query, perhaps based on a fingerprint check, and obtained the information without learning that the record had been sealed, there would be no basis for so concluding. On the other hand, however, the complaint alleges that the NASD "unlawfully" investigated him. The word doubtless could include a broad range of conduct, all or at least some of which might be wrongful. Given that the

---

1.  Cpt. ¶ 31.

2.  *E.g., Nadel v. Play–by–Play Toys & Novelties, Inc.,* 208 F.3d 368, 382 (2d Cir.2000).
    In its most recent decision on this point, the Court of Appeals described the third prong of the test as requiring, as one alternative, a wrongful purpose as opposed to a sole purpose of harming the plaintiff, citing principally *Burba v. Rochester Gas and Elec. Corp.,* 139 A.D.2d 939, 528 N.Y.S.2d 241 (4th Dept. 1988), and *Nadel. Lombard v. Booz–Allen & Hamilton, Inc.,* 280 F.3d 209, 214 (2d Cir. 2002). The majority in *Burba,* however, did not articulate the test it applied, while the dissenters stated in as requiring a sole purpose of harming the plaintiff, as did the Cir-

cuit in *Nadel.* In consequence, there is no reason to believe that *Lombard's* formulation reflects any change in the long established law.

3.  *Lombard,* 280 F.3d at 214; *accord Riisna v. Brennan,* No. 01 Civ. 2698(LAK), 2001 WL 987478, at *1 (S.D.N.Y. Aug. 23, 2001) (citing *Snyder v. Sony Music Entertainment Inc.,* 252 A.D.2d 294, 300, 684 N.Y.S.2d 235, 239 (1st Dept.1999)); *Protic v. Dengler,* 46 F.Supp.2d 277, 279 (S.D.N.Y.), *aff'd,* 205 F.3d 1324 (2d Cir.1999) (table).

4.  Cpt. ¶ 34.

complaint may not be dismissed unless it is clear that plaintiff could prove no facts under it that would give rise to liability, the Court cannot now dismiss the tortious interference claim for legal insufficiency. The NASD nevertheless argues that the claim against it should be dismissed on three alternative grounds—failure to exhaust administrative remedies, the absence of any implied private right of action against it for actions taken in its statutory role, and absolute immunity.

To take these in reverse order, it is well established that the NASD is absolutely immune from state law liability for actions taken in a regulatory or adjudicatory context pursuant to responsibilities imposed upon it by the Securities Exchange Act of 1934 (the "Exchange Act").[5] But the action taken here surely did not occur in an adjudicatory context. And while there is no question but that the NASD is required by SEC Rule 17a–3(a)(12)(i)(g) to inquire of registered representatives concerning

arrest records[6] and by Rule 17f–2 to submit their fingerprint records to the FBI for processing and to maintain information received from the FBI[7] it is far from clear at this stage of these proceedings whether the NASD obtained the arrest record from the FBI.[8] In consequence, the NASD has failed to establish that the action complained of by plaintiff took place pursuant to the NASD's regulatory mandate. While it may well do so at a later stage of this action, the same principle that requires denial of the motion to dismiss the tortious interference claim on the merits requires denial for the moment of its absolute immunity claim.

The NASD's contention that there is no private cause of action against it for performance of its statutory role, which is correct, is beside the point. The cases upon which it relies all stand for the proposition that there is no implied private right of action *under federal law*.[9] But

5. 15 U.S.C. § 78a *et seq.* *E.g.*, *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir.), *cert. denied*, — U.S. ——, 122 S.Ct. 666, 151 L.Ed.2d 580 (2001); *P'ship Exch. Sec. Co. v. NASD, Inc.*, 169 F.3d 606, 608 (9th Cir.1999); *Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1213 (9th Cir.1998).

6. 17 C.F.R. § 240.17a–3(a)(12)(i)(g) (2001).

7. *Id.* § 240.17f–2.

8. *See, e.g.*, *D'Alessio*, 258 F.3d at 105–06 ("In determining whether the NYSE is entitled to absolute immunity ..., we look not at the manner in which [plaintiff] casts his claims against the NYSE (*i.e.*, tort or contract), but rather to the alleged misconduct ... as detailed in the complaint.").

9. More specifically, the cases cited by the NASD stand for the proposition that "there is no private right of action available under the Securities Exchange Act to redress denials of membership in an exchange, or to challenge an exchange's failure to follow its own rules." *Desiderio v. NASD, Inc.*, 191 F.3d 198, 208 (2d Cir.1999), *cert. denied*, 531 U.S. 1069, 121

S.Ct. 756, 148 L.Ed.2d 659 (2001); *see also Meyers v. NASD, Inc.*, No. 95–CV–75077, 1996 WL 1742619, at *4–5 (E.D.Mich. Mar. 29, 1996) (holding that there is no private right of action against the NASD for violation of its own rules). To the extent these courts dismissed claims designated by plaintiffs as state law claims, they did so because the state law claims were nothing but disguised versions of the prohibited federal claims. *E.g.*, *Desiderio*, 191 F.3d at 207–08 (characterizing the state tort law claims as alleging " 'arbitrary and capricious administration' in having an unpublished method' for avoiding mandatory arbitration" and noting that "plaintiff warrants that an unnamed employee of NASD chose to remain 'perversely silent' about the fact that the NASD rules do not actually prohibit an agreement between the employer and employee"); *Meyers*, 1996 WL 1742619, at *5 ("[T]he averments read as an alternative attempt to allege that the NASD has breached its duty under its regulations, which, as discussed above, also fails to state a cause of action."). The Court does not view plaintiff's state law tort claim as an attempt to dress up a claim regarding the NASD's failure to follow its own rules.

plaintiff does not claim that there is. Rather, he sues the NASD on a common law tort theory. The absence of an implied federal cause of action therefore is immaterial.

Finally, the NASD correctly points out that plaintiff has not exhausted his administrative remedies before the Securities and Exchange Commission, which is empowered to take action against self-regulatory organizations including the NASD to ensure that they comply with their own rules and the Exchange Act.[10] But plaintiff does not here claim that the NASD violated its own rules or the Exchange Act. Moreover, he seeks damages, a remedy not available to him under the provisions upon which the NASD relies. In consequence, there is no merit to the NASD's exhaustion argument.[11]

*Punitive Damages*

■ Finally, it is hornbook law that there is no stand-alone claim in New York for punitive damages.[12] If plaintiff wishes to seek punitive damages with respect to another count of the complaint, he may amend his prayer for relief.

*Conclusion*

Accordingly, Schwab's motion to dismiss the fourth and sixth claims for relief is granted in all respects. The NASD's motion to dismiss is granted in all respects save that it is denied insofar as plaintiff alleges that the NASD's procurement and disclosure of plaintiff's allegedly sealed arrest record tortiously interfered with his prospective economic relationship with Schwab.

SO ORDERED.

---

10. *See* 15 U.S.C. §§ 78s(h), 78u(f).

11. *Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 57 (2d Cir.1996) (reversing dismissal of plaintiff's complaint against NYSE when principal relief sought was money damages to compensate for past harm rather than reversal of an adverse determination); *see also McCarthy v. Madigan,* 503 U.S. 140, 154, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("[T]he absence of any monetary remedy in the grievance procedure ... weighs heavily against imposing an exhaustion require-

ment."); *Swirsky v. NASD,* 124 F.3d 59, 63 (1st Cir.1997) (recognizing as one of the "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion" the situation in which "the agency is not empowered to grant effective relief" (internal quotation marks omitted)).

12. *E.g., Mayes v. UVI Holdings, Inc.,* 280 A.D.2d 153, 161, 723 N.Y.S.2d 151, 157 (1st Dept.2001).